## MARKEY v. MARKEY et al.

*(Common Pleas of New York City and County, General Term. April 20, 1891.)*

1. EXPRESS TRUST—ASSIGNMENT OF BANK ACCOUNT.

　　Defendant M. and plaintiff cohabited and were known as man and wife for four years, though they were never married.　During that period plaintiff, on making a deposit in a savings bank, requested the secretary "to put M.'s name upon the book;" and on his asking "if she wanted it in trust or either to draw," and telling her that if she put in trust she would have control of it as long as she lived, and on her death it would go to M., she said that that was what she wanted; and he then wrote, after her name on her pass-book, the words "in trust for M."　*Held,* that no trust in favor of M. was established, as plaintiff did not intend to create a trust, but to make a species of testamentary disposition of the funds in M.'s favor; and that, such intention having been communicated immediately by her to M., and understood by him, her subsequent delivery of the book to him was no evidence of an assignment of the fund to him.

2. SAME—STAY OF EXECUTION.

　　The court, in an equitable action, on adjudging that the plaintiff is the owner of a fund in dispute, may stay the execution of the judgment for a specified period, to afford defendant an opportunity of establishing by legal proceedings a claim against plaintiff for moneys alleged to have been received from him.

Appeals from special term.

Action by Catharine Markey against Patrick Markey and the Franklin Savings Bank of the City of New York.　The defendant bank answered the complaint, but did not appear at the trial.　Defendant Patrick Markey appeals from a judgment for plaintiff rendered on trial by the court without a jury, and plaintiff appeals from so much of the judgment as stays execution thereof for one year.

Argued before DALY, C. J., and ALLEN and PRYOR, JJ.

*Robert A. B. Dayton,* for plaintiff.　*Straley, Hasbrouck & Schloeder, (John A. Straley,* of counsel,) for defendant Patrick Markey.

DALY, C. J. The plaintiff, whose name was Catharine Conlon, had been a domestic servant up to July, 1883, and from her savings had deposited with the Franklin Savings Bank various sums of money. At the last-named date she went to live with Patrick Markey, and she testified that she was married to him at that time. The trial judge appears to have thought that the defendant Markey's denial of the marriage counterbalanced the plaintiff's assertion, for he found at defendant's request that the plaintiff is not named Catharine Markey, and that such name is assumed by her without right or authority, and that her true and proper name is Catharine Conlon. During her residence with Markey, however, they were known as man and wife, and she was called by his name with his knowledge. Assuming, therefore, as defendant Markey would have us believe, that the cohabitation between himself and the plaintiff was not sanctioned by marriage, this illicit connection continued for four years up to September, 1887, when they went out for a walk, and, after a quarrel, parted. These relations between the parties have some bearing on the question in dispute in this case, which relates to the money in bank deposited by the plaintiff, and to an alleged transfer of it by her to him, or in trust for him, on March 17, 1886, while they were living together. On that date the plaintiff went to the bank, and, after making deposits amounting to $120, requested the secretary, whom she saw, "to put Patrick Markey's name upon the book." What she meant by this is not shown, nor whether she intended to give Patrick Markey any interest in her money, except that the idea which she conveyed to the secretary was, as he swears, that she wanted to give Markey an equal share with herself. Whether this was so or not, her views assumed a distinct shape from the subsequent suggestions of the secretary. He asked her "if she wanted it in trust, or either to draw," and he proceeded to explain to her what he understood to be the difference between putting it in trust and having it in joint account, either party to draw. He told her that if she put it in trust she would have control of it as long as she lived, and in the event of her death it would go to Markey. She then stated that that was what she wanted, and the secretary wrote in the words "in trust for Patrick Markey" after her name, on her pass-book. It is claimed by the defendants that the plaintiff by this act declared and established a trust in favor of Patrick Markey as beneficiary of the whole sum which she had at that time on deposit at the bank, and which, with interest, at the time of the trial of this action, amounted to $1,128.51. This action is brought by the plaintiff to have it adjudged that Patrick Markey has no interest in the money, and that she is the owner thereof, and that the bank pay the same to her, and that defendant Markey deliver up to her her bank pass-book, which remained with him when she left him in September, 1887, and which he refuses to deliver up on her demand, claiming that the plaintiff sold, assigned, and transferred to him all of said account, and delivered the book as the voucher and evidence thereof. It appears from Markey's request to find, that his claim of a sale and transfer to him is based upon the transaction at the bank detailed above. He claims that she then and there transferred her account from herself individually to herself as trustee for him, and that she thereby intended to create and consummate a trust in his favor.

To create a trust it is necessary that there should be an intention on the part of the donor to part with all interest in the subject of the trust, and to vest the title in another by some act sufficient to pass the title. The question of intent controls. In *Weber* v. *Weber*, 58 How. Pr. 256, where a depositor in a savings bank opened several accounts in his name in trust for his children, but did so only in order to receive the highest rate of interest, and without any intention of parting with the ownership of the money, or of making a gift or transfer of it to his children, it was held by the supreme court (VAN VORST, J.) that no trust was established. The court said that the question

whether a voluntary trust is created or not is a question of fact in the case, and the court in determining the fact will give effect to the purposes or objects which the settler had in view in making the disposition. Quoting Lord CRANWORTH, (in *Jones* v. *Lock*, L. R. 1 Ch. App. 25:) "The case turns upon the short question whether the father intended to make a declaration that he held the property in trust for the child,"—it was held that the intent of the depositor at the time, gathered from his words and acts, together with the circumstances, must needs be considered to determine the true character of the transaction. The facts in that case closely resemble those before us; the depositor acting upon information from the bank clerk that the money would remain his, no matter in whose name it was deposited. He said he wished to control it as long as he lived, but had no objection to letting his children have it after his death. It was held that if a literal construction of the transaction as presented by the bank-books established an irrevocable trust, the same is the result of a mistake on the part of the depositor, to which, in equity, he should not be held. We followed this ruling in another action growing out of the same transaction, (*Weber* v. *Weber*, 9 Daly, 211,) holding that, there being no intention to part with the ownership of the money, nor to making a gift or transfer of it, no trust was made or created. Both of these cases were decided after *Martin* v. *Funk*, 75 N. Y. 134, and upon the authority of that case with respect to the controlling question of the intent of the donor. In that case the intent was inferred from the act. There was no evidence of any other intent. It was said that the fact that the depositor may have believed that the deposits might be withdrawn during her life and the money converted to her own use would not change the legal effect of her act; but the act and the intent to do the act had been established. It was not as in the *Case of Weber*, where a contrary intent was conclusively proved. In the later case of *Willis* v. *Smyth*, 91 N. Y. 301, the question of intent to create a trust is the controlling consideration, and such intent is gathered from the language employed and all the circumstances of the case. And so in *Mabie* v. *Bailey*, 95 N. Y. 206, the case of *Martin* v. *Funk* was interpreted as deciding that a deposit in form in trust for another constituted a trust, and, unexplained, operated to transfer the beneficial interest in the deposit to the beneficiary named; and it was said by the court, (per ANDREWS, J.:) "If it was now necessary to decide that point I should incline to the opinion that the character of such a transaction as creating a trust is not conclusively established by the mere fact of the deposit so as to preclude evidence of contemporaneous facts and circumstances constituting *res gestæ* to show that the real motive of the depositor was not to create a trust, but to accomplish some independent and different purpose inconsistent with an intention to divest himself of the beneficial ownership of the funds. In the case before us it needs no argument to demonstrate that there was no intention whatever on the part of Catharine Conlon to create a trust. Her original intention when she went to the bank was clearly not to make a trust, because "putting Markey's name on the book" (which was all that she requested) would not have that effect; and we are left in no doubt as to what purpose she ultimately formed and intended to carry out and supposed that she had accomplished. The proof of this does not lie in her own assertion of intention, but in the evidence of it given by the secretary of the bank, who was examined as a witness for defendants, and whose version of the transaction I have given in substance above. He suggested a trust, and undertook to explain what it would accomplish; and she, understanding from this explanation that she was to retain control of her money during her life, and that after her death it would go to Markey, stated that that was what she wanted done. She therefore intended to create no trust. The act of the secretary of the bank in writing the words "in trust for Patrick Markey" in her book, after her name, created no trust. She wished to make one provision, and he, mistakenly supposing that

he was aiding her to accomplish it, proceeded without authority to make a totally different provision. What she meant to do was to retain her money until her death, and then she designed it should go to Markey. There was no trust created for any purpose during her life, and there was to be no trust after her death, for then Markey was to have the whole fund. There was no transfer to Markey, for all the disposition made for him was apparently of a testamentary nature, which could not be effectuated in that way, and which, if made, could always be revoked. That she did intend a species of testamentary disposition of the funds in Markey's favor is proved by the testimony of Markey as to what occurred between her and him on the evening of the day of the transaction at the bank. "She told me that evening that whatever money she had in the bank she would leave it to me. She had one sister, and the sister gave her an awful going over; and she said she would not leave her a cent if she were dying in a minute. She said she would leave it to me." This evidence shows conclusively what the plaintiff understood had been effected by the transaction at the bank,—that she had made a disposition of her money, to take effect at her death, and not during her life-time. It also shows that Markey clearly understood he was to have no interest in the money during her life, and that there was no transfer of the fund at that time to him, and that the delivery of the book to him was not intended as an evidence of such transfer. There being clearly no assignment of the deposit to Markey, there is no necessity for considering his claim of consideration for the alleged transfer. He claims that the $120 deposited by her on March 17, 1886, was his money. She explains it to have been her money,—the repayment of a loan to a third party, to make which she drew out $300 in January, 1883. He claims that when they parted in September, 1887, she took with her a large sum intrusted to her for safe-keeping by him. She denies the receipt and retention of any money belonging to him. But the question of consideration is of no moment when there is no evidence of transfer. So far from desiring to turn over her deposit to Markey, she would not give him an equal right with herself to draw it, or any part of it. Says the secretary of the bank: "When I explained to her the difference between putting it in trust and having it in joint account, when either party could draw, then she wanted it in trust. I told her she would have control of it as long as she lived, and in event of her death it would go to Markey. That was what she wanted." No more positive evidence of a determination that Markey was to get none of it while she lived could scarcely be found in human testimony. There remains to be considered but the appeal of the plaintiff from so much of the judgment as in effect stays the execution of the judgment in her favor for a specified period in order to afford the defendant an opportunity of establishing in legal proceedings his claim against her for moneys which he alleges she had from him. The court has power in an equity action to make provision for the time when the judgment is to be carried into effect. Such provisions are familiar in the numerous actions for injunctions against the elevated railroads. Where certain circumstances of the case are thought to require it, and there is no abuse of discretion in making the provision, the judgment in that respect will not be disturbed. Judgment affirmed, without costs or disbursements of appeal to either party. All concur.