CHAPIN & CHAPIN, INC.

v.

McSHANE CONTRACTING CO., INC.

COMMONWEALTH to the Use of Chapin & Chapin, Inc.

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY.

Civ. A. Nos. 72–862, 72–972.

United States District Court, W. D. Pennsylvania.

April 4, 1974.

Jack W. Plowman, Plowman & Spiegel, Pittsburgh, Pa., for plaintiffs.

John A. Metz, Jr., and Leo J. Kelly, Metz, Cook, Hanna & Kelly, Pittsburgh, Pa., for defendants.

## OPINION

SNYDER, District Judge.

Counsel for the Defendants, McShane Contracting Co., Inc. (McShane) and United States Fidelity and Guaranty Company (USF&G), filed Motions for Stay of Execution under Authority of Rule 60(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons as hereinafter set forth, the Motions will be denied.

On January 24, 1974, a judgment was entered on a verdict in the amount of $62,448.49 against the Defendant McShane at Civil Action No. 72–862 and by stipulation, depending on the outcome of the trial in the McShane case, the same judgment was also entered against Defendant USF&G at Civil Action No. 72–972. The actions involved a contract for the installation of concrete paving of a portion of Pennsylvania State Highway, Legislative Route 1074 (Section 2) which McShane was building as part of its prime contract with the Pennsylvania Department of Transportation (Penn Dot). McShane had subcontracted to Chapin part of the project. The subcontract provided *inter alia*, that the prime contract as applicable was made part of the subcontract; that the subcontract would be performed in strict accordance with Penn Dot's specifications; that the work of the subcontractor was to be performed in a skillful and workmanlike manner; and that the work was subject to inspection and approval by Penn Dot. USF&G was Chapin's surety on the subcontract and McShane's surety on the prime contract.

The Complaint filed by Chapin against McShane alleged that Chapin furnished labor and material, and that McShane breached the subcontract with Chapin in failing to prosecute the work in accordance with the schedule established by the Commonwealth in the prime contract and in failing to have the work under the prime contract completed so that Chapin could perform its subcontract. Chapin further alleged that McShane breached its subcontract in failing to make payments to Chapin in the correct amounts or at the proper times; that as a result of the aforesaid breaches of the subcontract the Plaintiff terminated the subcontract on October 9, 1972, and sustained damages by reason of loss of bargaining power and excess costs in the amount of $166,288.07.

---

1. "Rule 60. *Relief from Judgment or Order* (b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (6) any other reason justifying relief from the operation of the judgment. * * * A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation."

McShane answered the Complaint denying all breaches of the subcontract and counterclaimed for the sum of $200,000.00 for Chapin's failure to perform the contract, alleging that McShane incurred additional costs over and above the performance costs of the Chapin contract.

Trial commenced on the morning of January 9, 1974, and concluded January 24, 1974. The Jury answered a set of Special Interrogatories[2] finding that McShane had breached its contract by reason of which Chapin was damaged to the extent of $62,448.49. Judgment was entered in favor of Chapin for the aforementioned amount. The Defendants now seek a stay of execution in which they assert a new claim by McShane against Chapin for additional breach of contract.

2. The Special Interrogatories were:
   1. Did the final contract between the parties, in addition to the writing, provide: (Answer "Yes" or "No")
      (a) that there would be but one move-in in the year 1972?   "No"
      (b) that the move-in was to be no later than June 1972?   "Yes"
      (c) that there was to be a certain sequence of the work?   "Yes"
   2. Did McShane breach the contract as you found it to be in such a material way as to give Chapin & Chapin the right to terminate that contract? Answer "Yes" or "No":   "Yes"
   3. Only if your answer to Question 2 is "Yes", What amount do you award to Chapin & Chapin against McShane for McShane's breach of contract? Answer: $"62,448.49"
   4. Did Chapin & Chapin breach the contract as you found it to be by failing to pave when McShane required performance of Chapin & Chapin? Answer "Yes" or "No":   "No"
   5. Only if your answer to Question 4 was "Yes":
      (a) What amount, if any, do you award McShane against Chapin for Chapin's breach of contract? Answer: $ "None"
      (b) What amount, if any, do you find owing to Chapin for work done for McShane and additional costs caused by McShane prior to October 9, 1972? Answer: $ "None"

3. February 11, 1974 Letter read as follows: "In reference to the above subject, please be advised that retainage in the amount of

As early as May 8, 1973, eight months *before* trial began and six months after McShane filed its Answer and Counterclaim, McShane notified Chapin by letter that core borings had been done by Penn Dot which indicated a deficiency in the depth of the reenforced concrete in several areas paved by Chapin. The letter further stated that Chapin would be notified of a meeting to be scheduled by Penn Dot to discuss the disposition of this matter. As far as the records here show, Penn Dot did not notify McShane until February 11, 1974, which was after the completion of the trial, that Penn Dot was withholding from McShane the amount of $43,000.00 pending correction of paved areas which were cracked and of deficient depth.[3]

$43,000.00 will continue to be withheld pending correction of the cracked and deficient depth 9-inch R.C.C. pavement placed by your subcontractor Chapin and Chapin, Incorporated on the above identified project.

As you are aware approximately 1,870 square yards of 9-inch R.C.C. pavement must be removed and replaced due to the core drill investigation report identifying certain areas on the project where pavement depth was found to be deficient by more than .50 of an inch. At the prevailing contract unit price of $12.00 per square yard, approximately $22,440.00 is being withheld until the pavement is replaced; the removal of the existing pavement will be costly and time consuming and is not considered in the above cost. Also the penalty assessed due to deficient pavement in excess of .25 of an inch to .50 of an inch is approximately $6,740.00, and is also being withheld.

The removal and replacement of approximately 100 square yards of cracked pavement at the contract unit price of $12.00 per square yard in the amount of $1,200.00 is being withheld. This also does not represent cost for removal of existing pavement which shall be borne by the contractor at all removal areas.

In addition to the above it is estimated that it will take 45 additional calendar days to complete the required removal and replacement. This will place this contract in liquidated damages at the specification rate of $300.00 per day for a total of $13,500.00.

The total being withheld for pavement deficiencies should therefore be $43,840 plus $1,000 pending resolution of exact final quantities.

Your cooperation in resolving this matter as expeditiously as possible will be expected,

This pavement work was performed entirely by the subcontractor, Chapin. McShane estimated that the total cost of removing, replacing, or repairing the pavement together with the penalties for delay, would be $91,207.53. McShane then averred in its Motion here that if Penn Dot's claim against it for McShane's defective performance of the prime contract was valid, then this amount would be recoverable from Chapin. McShane also requested leave to proceed forthwith by appropriate action to determine the exact amount of the claim. The Motion on behalf of USF&G was that it should not be required to pay the judgment of Chapin against it until its liability to McShane as surety for Chapin, under its subcontract performance bond, was finally determined. The Motion asked that an appropriate order for stay of execution be entered in both cases for a period of one year or until further order of the Court. It is appropriate to note that no appeal has been taken from the judgment entered on January 24, 1974.

Chapin contended contra the Motion that McShane's claim for breach of contract arising out of the concrete pavement condemned by Penn Dot is merged in the judgment or, in any event, the doctrine of collateral estoppel should be applied and bar the present claim. The doctrines of res judicata and collateral estoppel were distinguished by the United States Supreme Court in Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). The Court stated: (at 349 U.S. 326, 75 S.Ct. 867, 99 L.Ed. 1126, 1127)

"The basic distinction between the doctrines of Res judicata and collateral estoppel, as those terms are used in this case, has frequently been emphasized. Thus, under the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit."

This Court is of the opinion that neither the doctrine of res judicata nor collateral estoppel apply here. Res judicata does not apply since the claim now being asserted by McShane, i. e. that Chapin breached its contract in the performance of putting down an insufficient amount of concrete or improper pavement to meet the specifications of Penn Dot, is not the same cause of action litigated in the previous jury trial.[4] Neither Counsel contend, nor can the Court find, that this claim was specifically tried or even considered in the first suit. Chapin, however, takes the position that McShane was required to litigate the defective concrete issue and since it did not, the issue is therefore merged.

The law is that in the absence of a Statute or Rule of Court otherwise providing, the defendant has the option of interposing a counterclaim or bringing a separate action against the Plaintiff. In the situation where the defendant does not interpose a counterclaim, although he is entitled to do so, he is not precluded thereby from subsequently maintaining an action against the Plain-

---

if no action is taken by you and your subcontractor to correct the aforementioned deficiencies by April 15, 1974, we must then seek a resolution by the Bonding Company."

4. See Barzin v. Selective Service Local Bd. No. 14, 446 F.2d 1382 (3rd Cir. 1971); Jamerson v. Lennox, 356 F.Supp. 1164 (E.D. Pa.1973); Baily v. United States, 350 F. Supp. 1205 (E.D.Pa.1972) motion to alter judgment denied 355 F.Supp. 325; Adley

Express Co. v. Highway Truck Driv. & H., Loc. No. 107, 349 F.Supp. 436 (E.D.Pa. 1972); Schmucker v. Nationwide Mutual Insurance Company, 344 F.Supp. 701 (E.D. Pa.1972) for situations where the Court determined either that the doctrine of res judicata was applicable or that the facts alleged gave rise to a new cause of action which prevented the application of the principle of res judicata.

tiff on the cause of action which could have been set up as a counterclaim. The American Law Institute, Restatement of the Law of Judgments, Section 58 and Comment A, provide:

"Where the defendant does not interpose a counterclaim although he is entitled to do so, he is not precluded thereby from subsequently maintaining an action against the plaintiff on the cause of action which could have been set up as a counterclaim.

*Comment:*

a. In the absence of a statute or rule of court otherwise providing * * *, the defendant has the option of interposing a counterclaim or of bringing a separate action against the plaintiff. If he has a claim against the plaintiff, whether or not arising out of the same transaction or occurrence as that on which the plaintiff's claim is based, he is not bound to plead it as a counterclaim, although he is permitted to do so; and his failure to interpose it as a counterclaim will not bar him from maintaining an action upon it. Counterclaims are permissible but not compulsory, unless a statute otherwise provides.

In this respect a counterclaim is different from a defense to the plaintiff's claim. As is stated in § 47, if the defendant fails to interpose a defense to the plaintiff's claim and judgment is rendered for the plaintiff, the defendant cannot thereafter assert the defense which he might have interposed."

A thorough discussion of this very point is found in United States v. Eastport Steamship Corporation, 255 F.2d 795 (2nd Cir. 1958), where the following appears at page 801:

*"Compulsory Counterclaim*

From the above discussion it may be observed that in the absence of a statute or rule of court to the contrary, the sole limitation upon the piecemeal litigation of conflicting claims which arise out of a single litigious transaction or occurrence is that imposed by the doctrine of collateral estoppel. See Restatement of Judgments § 58, comments b and c. Recognition of the interest of judicial administration in avoiding a multiplicity of actions each based upon the same facts has logically led to the adoption of statutes and court rules providing 'for the effective settlement at one time of all disputes of which parts are already before the court.'[8] Rule 17(a) of the Court of Claims is such a rule. Modeled after Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.—which, in turn, was based upon Equity Rule 30—Rule 17(a) requires the Government to plead as a counterclaim any claim which it has against the plaintiff 'if it arises out of the transaction or occurrence that is the subject matter of the petition * * *'[9] Though not explicitly stated therein, it is well settled that the penalty for failure to comply with the rule is that an independent action will not subsequently lie upon a claim which should have been asserted as a counterclaim. 3 Moore's Federal Practice ¶ 13.12 (2d ed. 1948). In recognition of Rule 17(a) the District Court held that the failure of the Government to plead its claim for additional charter hire in the Court of Claims was a bar to the maintenance of the present suit.[5]

---

5. Footnotes 8 and 9 of the Court's Opinion appear here:
"8. Lesnik v. Public Industrials Corporation, 2 Cir., 1944, 144 F.2d 968, 973; see Blair v. Cleveland Twist Drill Co., 7 Cir., 1952, 197 F.2d 842; United States, to Use of and for Benefit of Foster Wheeler Corporation v. American Surety Co. of New York, D.C.E.D.N.Y.1938, 25 F.Supp. 700, affirmed 2 Cir., 142 F.2d 726."
"9. Rule 17(a), 28 U.S.C. in its entirety, provides:
'Rule 17. Counterclaims
"(a) Compulsory Counterclaims. The answer shall state as a counterclaim any claim which at the time of serving the an-

The Government urges that the action of the District Court in dismissing its libel on this ground was premature. The Government maintains that a compulsory counterclaim not pleaded comes within the scope of the judgment in the action in which it should have been interposed and thus becomes *res judicata*. However, because the dismissal of its libel in the District Court was prior to the rendition of the second judgment in the Court of Claims, the Government argues that the District Court acted too hastily in holding the Government's claim for charter hire barred by Rule 17(a). We are unpersuaded by this argument. The compulsory counterclaim rule requires that once the action was commenced in the Court of Claims that court was the only proper forum for the adjudication of any claims by the Government arising out of the transaction or occurrence that was the subject matter of Eastport's petition. If the Government's claim for additional charter hire was a compulsory counterclaim in the Court of Claims, the dismissal of its libel by the District Court was proper even though no judgment had previously been rendered by the Court of Claims. E. J. Korvette Co. v. Parker Pen Co., D.C.S.D.N.Y.1955, 17 F. R.D. 267."

As indicated, the principle that counterclaims were not compulsory was dealt with in Federal Rule of Civil Procedure No. 13, dividing counterclaims into *compulsory* and *permissive* counterclaims as follows:

"Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

"Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

Counsel for the Defendants admit, as they must, that the subject matter of the defective pavement arose out of the transaction or occurrence that was the subject matter of the suit in which the judgment in the instant case resulted. Judge Davis, in Berger v. Reynolds Metals Company, 39 F.R.D. 313 (E.D.Pa.1966), covered the problem very well with the following language, at page 316:

"Rule 13(a) provides that a compulsory counterclaim is one which 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.' While this phrase has escaped exact definition, the decisions have adopted the test of whether there is a logical relationship between the two causes* of action.

---

swer the defendant has against any plaintiff, if it arises out of the transaction or occurrence that is the subject matter of the petition and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of

another pending action, and except that in any case, where the hearing in the first instance is limited to the issues of fact and law relating to the right of plaintiff to recover, defendant may plead such a counterclaim within 60 days after the Court shall have rendered judgment determining that plaintiff has a right to recover.' "

Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631 (3d Cir. 1961); United Artists Corp. v. Masterpiece Productions, Inc., 221 F.2d 213 (2d Cir. 1955).

In order to determine whether the counterclaim meets this standard, the court must look to the allegations in the pleadings. Here the complaint alleges that the defendant Reynolds Metals Company, through the ownership of a majority of the stock in New Eastwick, diverted the latter's assets for Reynolds' benefit. It also contends generally that all the defendants have been guilty of various acts of mismanagement and particularly that they have failed to proceed in good faith with Philadelphia's Eastwick Redevelopment Project in violation of agreements between New Eastwick and the Redevelopment Authority of Philadelphia and have surrendered the development of a substantial portion of the land involved to another company.

In its counterclaim, the defendants allege that Samuel A. Berger had made fraudulent misrepresentations pertaining to the time for filing bids with the Redevelopment Authority and that the joint venture agreement between the Bergers and Reynolds Metals Company was based thereon. It also charges the Bergers with antagonistic and obstructionist acts against the defendants' efforts to effectuate the redevelopment of Eastwick.

It is clear to this court that a logical relationship does exist between the claim and the counterclaim. Both involve allegations relating to the obligations and abilities of New Eastwick to carry forth a specific urban development project, and the plaintiff goes so far as to admit in his brief that 'It would, of course, be less than candid not to say that both the claim and counterclaim are rooted in the economic failure of New Eastwick.' Therefore, we deem the counterclaim compulsory. See Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631 (3d Cir. 1961); United Artists Corp. v. Masterpiece Productions, Inc., 221 F.2d 213 (2d Cir. 1955); Arvey Corp. v. Peterson, 178 F.Supp. 132 (E.D.Pa.1959); E. J. Korvette Co. v. Parker Pen Co., 17 F.R.D. 267 (S.D. N.Y.1955). See Wright, Estoppel by Rule: The Compulsory Counterclaim under Modern Pleading, 38 Minn.L. Rev. 423 (1954); 3 Moore, Federal Practice, § 13.13; 1A Barron & Holtzoff, Federal Practice & Procedure § 394."

However, the portion of the Rule which is critical here is the section which provides that for the counterclaim to be compulsory it must be one which *"at the time of serving the pleading the pleader has against any opposing party"*. It will be recalled that the Defendant's Answer was served on the opposing party on November 15, 1972, so the question is: Did the Defendant have this counterclaim against the Plaintiff at that time? This question must be answered in the negative.

In Hartford Accident & Indemnity Co. v. Levitt & Sons, Inc., 24 F.R.D. 230 (E.D.Pa.1959), there was an action by the insurance company of a general contractor against a real estate developer for contribution in regard to a recovery made against the contractor by a worker who had been injured during the course of the construction work being performed under the contract between the general contractor and the developer. Upon the developer's motion to dismiss or in the alternative for summary judgment in its favor, the District Court in an opinion by Circuit Judge Goodrich held that the compulsory counterclaim rule did not bar the action for contribution and stated as follows (at p. 232):

"Emphasis in the compulsory counterclaim rule is to be placed on the 'shall' and the description of the claim to which the 'shall' attaches. It is one 'which at the time of serving the pleading the pleader has * * *.' This is interesting contrast with the

permissive language in Rules 13(g) and 14(a).

It seems clear to me that Jarvis had no matured claim against defendant at pleading time in the lawsuits outlined above. See Rule 13(e) which provides that a counterclaim maturing after a pleading has been served may be added by permission of court. If Jarvis had won, obviously it would have had nothing for which to claim contribution. Whether it was finally to lose was not settled until the judgment against it was affirmed on appeal. All there was prior to trial was a chance that Jarvis might be compelled to pay and if it did, it might get some money back from defendant. The compulsory counterclaim rule as applied to both of the suits in which Jarvis was involved does not bar this action for contribution. The following cases illustrate the proposition that only matured claims are subject to the compulsory counterclaim rule. Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 1951, 190 F.2d 217; Cyclotherm Corp. v. Miller, D.C.W.D.Pa.1950, 11 F.R.D. 88.

Defendant argues that the present action is barred by res judicata.

In the suit that Lebeck brought against Levitt, a new trial had been ordered by the Court of Appeals. (Lebeck v. William A. Jarvis, Inc., 3 Cir., 1957) 250 F.2d [285] at page 295. Subsequently when the injured man recovered against Jarvis, the Levitt suit was not pressed, and was dismissed for want of prosecution. Under Rule 41(b) this operates as an adjudication on the merits between plaintiff and defendant in that suit. The judgment would operate as a bar to subsequent suit by plaintiff against the defendant. Restatement, Judgments § 45 (1942). Lebeck v. Levitt is not the same suit as Hartford Company (Jarvis) v. Levitt and Sons, Inc., nor was it for the same cause of action.

Nor does the other division of res judicata, collateral estoppel, apply.

The plaintiff admits that had there been a fact adjudication in the Levitt suit, it would be bound by the facts adjudicated since Jarvis had the privilege of asserting defenses on behalf of the defendant. Fed.R.Civ.P. 14(a). But the dismissal involved no adjudication of fact except the want of prosecution. Restatement, Judgments § 68, comment f (1942)."

■ In our case *sub judice*, we do not feel that the claim of McShane had matured; since it's claim was based upon the failure of Chapin to put down sufficient concrete, there still remained a primary matter which had to be determined before the claim matured. This was whether or not the Commonwealth of Pennsylvania through Penn Dot would make a finding that there was such a *material* violation of the specifications as would constitute a breach of contract by McShane to which McShane could look for indemnity from Chapin. The claim was, therefore, not a compulsory counterclaim.

■ We must then determine one further matter and that is, since McShane is not barred by the doctrines of res judicata or collateral estoppel, should this Court refuse at this time to stay execution in the two matters which are before us. These matters are: (1) the Motion filed by McShane that it has a claim against Chapin; and (2) the Motion by USF&G which makes no claim against Chapin but wants to defer liability. If McShane recovers against Chapin on its alleged claim, it may well have a claim against USF&G as Chapin's surety. But USF&G's liability to McShane is as surety to Chapin and its liability as surety exists also for McShane. Therefore, its liability cannot be considered any differently than if two separate surety companies were involved. The particular identity of the party that is liable by reason of a surety bond should not prevent Chapin from executing on the judgment recovered against USF&G (by stipulation in the original action of Chapin v. McShane).

Counsel for the Defendants call the attention of the Court to Fed.R.Civ.P. 60(b)(6), which provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . . or (6) any other reason justifying relief from the operation of the judgment."

The reason asserted by the Defendants is, of course, that McShane has a claim against Chapin for the defective work arising out of the same contract that gave rise to the judgments in this case. Defendants then cite to the Court the statement from 21 Am.Jur., Executions § 604, page 292, which sets forth as follows:

"If the defendant has a setoff which he is entitled to assert notwithstanding the execution, execution thereon may be stayed until the question of setoff can be presented and adjudicated, and the right of setoff, if thereby established, may be made available."

■ However, the three cases cited in support of the statement, i. e. Steere v. Stafford, 12 R.I. 131 (which involved an insolvent plaintiff beginning execution against the defendant who had a suit pending against the plaintiff); Markey v. Markey, 38 St.R. 173, 13 N.Y.S., 925 (1891) (an action to establish the plaintiff's interest in a bank account and the defendant's attempt to establish a claim for that particular money and there seemed to be no other money available); and Knox v. Hexter, 42 N.Y.Super. 496 (1877) (stay of execution granted to promote equity and prevent injustice), all involved situations where there would be prejudice to the setoff or counterclaim if a stay of execution were *not* granted. In the instant case, if McShane is successful and Chapin is ordered to pay, there is still no equitable reason for granting the stay of execution at this time. Thus, the Motions for Stay of Execution are denied.

An appropriate order will be entered.