668 P.2d 130

**Elias ALDAPE, Jr., and Margaret Aldape, husband and wife, and Michael Jess Aldape and Conchita Aldape, husband and wife, Plaintiffs-Respondents,**

v.

**Paul AKINS and Mary Akins, husband and wife, and Donald B. Nesbitt and Betty L. Nesbitt, husband and wife, Defendants-Appellants.**

No. 14254.

Court of Appeals of Idaho.

Aug. 10, 1983.

Petition for Review Denied
Oct. 5, 1983.

Thomas A. Miller and Joseph D. McCollum, Jr., of Hawley, Troxell, Ennis & Hawley, Boise, for appellant.

Kenneth L. Pursley and Kenneth L. Mallea of Givens, McDevitt, Pursley & Webb, Boise, for appellee.

BURNETT, Judge.

In this appeal we apply the doctrine of res judicata to a quiet title action. The case represents a second round of litigation over title to land lying between the present course of the Boise River and its former riverbed. All of the parties own real property along the river. Movement of the stream has increased the dry land occupied by the Aldape family, and has flooded property owned by the other parties.

The first round of litigation began when the Aldapes filed a quiet title action against numerous record owners, including defendants Akins and Nesbitt, asserting title to the occupied dry land upon a theory of adverse possession. The trial court decided, and the Supreme Court affirmed, that insofar as the Aldapes' claim pertained to property owned by Akins and Nesbitt, the elements of adverse possession had not been proven. *See Aldape v. State,* 98 Idaho 912, 575 P.2d 891 (1978) (herein termed *Aldape I*). Thus, Akins and Nesbitt prevailed in round one.

■ In the second round, the Aldapes filed another quiet title action against Akins and Nesbitt. This time the Aldapes asserted title upon a theory of accretion.[1] Akins and Nesbitt raised the defense of res judicata against this renewed challenge to their title. However, the district court allowed the case to be tried on the accretion theory, and eventually held in favor of the Aldapes. This appeal ensued. For reasons explained below, we reverse. Because our decision rests upon the doctrine of res judicata, we need not reach other issues raised on appeal concerning the theory of accretion.

I

■ Res judicata denotes "a thing or matter settled by judgment." BLACK'S LAW DICTIONARY 1174 (rev. 5th ed. 1979). The doctrine of res judicata precludes the relitigation of a matter previously adjudicated. Functionally, the doctrine has two components—claim preclusion and issue preclusion.

> "[C]laim preclusion," or true *res judicata* ... treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." * * * When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar." * * * Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial.
>
> * * * * * *
>
> [C]ollateral estoppel or "issue preclusion" ... bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties. . . . [T]he contested issue

---

1. " 'Accretion' is the increase of riparian land by the gradual deposit, by water, of solid material ... so as to cause that to become dry land which was before covered by water." *Nesbitt v. Wolfkiel,* 100 Idaho 396, 398 n. 1, 598 P.2d 1046, 1048 n. 1 (1979). Accretion should be distinguished from avulsion. The latter is a sudden addition to land by the action of water. Title to that soil remains in the original owner. G. THOMPSON, EXAMINATION OF TITLES 72–73 (1929).

must have been litigated and necessary to the judgment earlier rendered. *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 535–36 (5th Cir.1978).

█ In the form of claim preclusion, the doctrine of res judicata serves three fundamental purposes. First, it "[preserves] the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results." 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4403, at 12 (1981). Second, it serves the public interest in protecting the courts against the burdens of repetitious litigation; and third, it advances the private interest in repose from the harassment of repetitive claims. *Id.* at 13–16.

## II

Before we examine claim preclusion in detail, an historical note is appropriate. The modern doctrine of res judicata, with its broad component of claim preclusion, has been a product of evolution. In the nineteenth century, res judicata simply precluded relitigation of the same cause of action. *E.g., Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1876). At that time, each form of action at law was attended by a cluster of axiomatic rules, specific in content, mandatory in application, and largely insulated from the more flexible proceedings in equity. As the nineteenth century drew to a close, the merger of law and equity caused the forms of civil actions to be less strictly distinguished from one another; and the concept of a "cause of action" lost its rigidity. When the RESTATEMENT OF JUDGMENTS (herein cited as the First Restatement) was prepared in 1942, the doctrine of res judicata was still expressed in terms of a cause of action, but it was further noted that a plaintiff who lost a lawsuit would not be permitted to try again on the basis of new evidence or a different legal theory. Neither could a losing defendant try again with a defense he had failed to interpose the first time.

First Restatement, §§ 47–48, and "Introductory Note" at 157–61.

The First Restatement was consistent with a landmark Idaho case. In *Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 208 P. 241 (1922), our Supreme Court applied res judicata to an action seeking to enjoin a change in the place where water was diverted and used under a decreed water right. The decree had been entered in prior litigation involving the same water and the same parties or their predecessors in interest. The Supreme Court held that although the effect of a dam, which had changed the place of use, was not expressly determined in the first trial, the underlying claim of right to use the water had been considered and decided. The Court added:

> We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit. [35 Idaho at 553, 208 P. at 242–43.]

The *Joyce* rule has been employed to bar plaintiffs from relitigating the same or similar claims in *Houser v. Southern Idaho Pipe & Steel, Inc.,* 103 Idaho 441, 649 P.2d 1197 (1982); *Ramseyer v. Ramseyer,* 98 Idaho 554, 569 P.2d 358 (1977); and *South Boise Water Co. v. McDonald,* 50 Idaho 409, 296 P. 591 (1931). It has also been applied to defendants, barring in an action on a judgment any defenses that should or could have been raised in the prior action which produced the judgment. *Tingwall v. King Hill Irrigation Dist.,* 66 Idaho 76, 155 P.2d 605 (1945).

Our Supreme Court has recognized the limits of the *Joyce* rule where matters raised in the second litigation were not ripe for adjudication in the prior action. *See, e.g., Duthie v. Lewiston Gun Club,* 104 Idaho 751, 663 P.2d 287 (1983); *Gaige v. City of Boise,* 91 Idaho 481, 425 P.2d 52 (1967). Moreover, the Supreme Court has carved out an apparent exception to the *Joyce* rule for cases in which mandamus and damages

are sought as alternative or cumulative forms of relief. In *Heaney v. Bd. of Trustees of Garden Valley School Dist. No. 71,* 98 Idaho 900, 575 P.2d 498 (1978), the Court held that res judicata did not apply to a damage claim for wrongful discharge from public employment, which had been preceded by an unsuccessful mandamus action seeking reinstatement of such employment. The Supreme Court focused its analysis upon the special nature of mandamus proceedings, noting that mandamus is a "summary and expeditious writ to compel performance of an established duty.... The basis for seeking mandamus—that is, default in the performance of a duty—commonly will be apparent long before the fact and amount of damages can be established." 98 Idaho at 903, 575 P.2d at 501. The mandamus exception to the *Joyce* rule, articulated in *Heaney,* is consistent with the Idaho Supreme Court's prior decisions in *Sutton v. Hunziker,* 75 Idaho 395, 272 P.2d 1012 (1954), and *Lawrence v. Corbeille,* 32 Idaho 114, 178 P. 834 (1919).

However, even when the ripeness limitation and the mandamus exception are taken into account, it must be acknowledged that our Supreme Court has not been entirely consistent in its application of the *Joyce* rule. In *Green v. Gough,* 96 Idaho 927, 539 P.2d 280 (1975), the Court—employing the traditional formulation of a "cause of action"—held that res judicata would not apply to an action, seeking damages for breach of a contract, which had been preceded by an unsuccessful action between the same parties for rescission of the contract. The Court observed that the cases raised different issues and concluded that they arose from separate causes of action. Similarly, in *Intermountain Food Equipment Co. v. Waller,* 86 Idaho 94, 383 P.2d 612 (1963), the Supreme Court held that identity of issues litigated was one of the essentials of res judicata. The Court refused to apply the doctrine of res judicata to a claim and delivery action which had been preceded by a chattel mortgage foreclosure action concerning the same parties and the same personal property. *See also Salvis v. Lawyer,* 73 Idaho 469, 253 P.2d 589 (1953)

and *Marshall v. Underwood,* 38 Idaho 464, 221 P. 1105 (1923) (declining to apply res judicata to cases involving the same claims but different issues).

■ The Idaho cases refusing to apply res judicata, unless there is an identity of issues, have failed to note the fundamental distinction between issue preclusion and claim preclusion. As noted earlier in this opinion, issue preclusion requires that the issues litigated be the same, but claim preclusion does not. Failure to perceive this distinction may, in turn, be traced to the historical practice of expressing res judicata in terms of the "cause of action." The traditional concept of a "cause of action" embraces both the entitlement asserted by a plaintiff (the claim) and the basis of the plaintiff's assertion (the issues). We believe the time has come in Idaho to state the doctrine of res judicata in terms free from the recrudescent trappings of a cause of action.

### III

Dissatisfaction with the cause of action as the foundation of res judicata has led to reformulation of the doctrine in the recently completed RESTATEMENT (SECOND) OF JUDGMENTS (1982) (herein cited as the Second Restatement). The Second Restatement is familiar to many Idaho judges and practitioners. Tentative drafts of the Second Restatement have been cited with approval by our Supreme Court in *Houser* and *Ramseyer, supra.*

The Second Restatement expressly recognizes the difference between claim preclusion and issue preclusion. The bar of claim preclusion is succinctly stated at § 19: "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." The limits of this rule of bar are determined by the dimensions of the concept of a "claim." The Second Restatement adopts a transactional view toward claims.

When a valid and final judgment rendered in an action extinguishes the plaintiff's claim ... the claim extinguished

includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose.

\* \* \* \* \* \*

What factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Second Restatement at § 24. Comment a to § 24 makes it clear that the transactional concept of a claim is broad, and that the bar of claim preclusion is similarly broad:

[I]n the days when civil procedure still bore the imprint of the forms of action and the division between law and equity, the courts were prone to associate claim with a single theory of recovery, so that, with respect to one transaction, a plaintiff might have as many claims as there were theories of the substantive law upon which he could seek relief against the defendant....

\* \* \* \* \* \*

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff....

Accordingly, the bar of claim preclusion may apply even where there is not a substantial overlap between the theories advanced in support of a claim, or in the evidence relating to those theories. Comment b to § 24. This conclusion is more fully stated in § 25 of the Second Restatement:

The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(1) To present evidence or grounds or theories of the case not presented in the first action, or

(2) To seek remedies or forms of relief not demanded in the first action.

Comment d in this section further explains the effect of claim preclusion:

Having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions, and accordingly the second action should be held barred.

There are exceptions to the bar of claim preclusion. However, they are narrowly defined in § 26 of the Second Restatement. Such exceptions are recognized where the parties themselves have agreed that the plaintiff may split his claim, where the court in the first action has expressly reserved the plaintiff's right to maintain the second action, where there are limitations on the subject matter jurisdiction of the court hearing the first action, or where the judgment in the first action was inconsistent with the implementation of a general statutory or constitutional scheme. Exceptions may also exist in special types of cases where a plaintiff is permitted to sue more than once for recurrent wrongs, and where there are extraordinary reasons for allowing a second action—such as the protection of personal liberty, or the need to bring coherency to disparate judgments in prior litigation.

■ We believe the Second Restatement, with its definitive treatment of claim preclusion, clarifies the scope of res judicata. We adopt it, subject to the ripeness limitation and mandamus exception which have been enunciated by our Supreme Court.

IV

■ The bar of claim preclusion, as set forth in the Second Restatement, applies with special force to quiet title actions. It has long been recognized that a claim of title to property is a claim of ownership.

"A person is said to have title to that which is of right his property, and his property is that over which he may of right exercise an exclusive dominion." G. THOMPSON, *supra* note 1, at 50.

The Idaho statutes governing quiet title actions further recognize the broad nature of a claim to title. I.C. § 6–401 defines an action to quiet title as an action which "may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim...." Our Supreme Court has held that every estate or interest known to the law in real property, whether legal or equitable, may be determined in an action to quiet title. *Lewiston Lime Co. v. Barney,* 87 Idaho 462, 394 P.2d 323 (1964).

▇ Precisely because a claim of title is a general claim of ownership of the property, a complaint to quiet title is sufficient if it alleges, in ordinary and concise terms, that the plaintiff is the owner of the disputed property, without setting forth the probative facts by which that ultimate fact is to be established. *E.g., Hammitt v. Virginia Mining Co.,* 32 Idaho 245, 181 P. 336 (1919). Although a quiet title action challenges the title of an adversary, the plaintiff necessarily asserts his own estate in bringing a quiet title action. *Dickerson v. Brewster,* 88 Idaho 330, 399 P.2d 407 (1965). Thus, a party seeking to quiet title against another must succeed on the strength of his own title, and may not rely merely upon the weakness of his adversary. *E.g., Pincock v. Pocatello Gold & Copper Mining Co.,* 100 Idaho 325, 597 P.2d 211 (1979).

▇ It follows that the plaintiff in a quiet title action does not merely claim title by a specific theory, or assert that there is a specific defect in the adversary's title. Rather, the plaintiff claims ownership, and he claims it upon any legal theory or set of probative facts which may be employed to establish such ownership. It has been widely held, in decisions consistent with the modern view of claim preclusion, that res judicata applies to repetitive actions concerning title to property, regardless of whether differing theories have been advanced in support of the claim of ownership. *E.g., Taylor v. Williams,* 107 So.2d 319 (La.App.1958); *Moore v. Harjo,* 144 F.2d 318 (10th Cir.1944); *Federal Crude Oil Co. v. Yount-Lee Oil Co.,* 103 F.2d 171 (5th Cir.1939); *Rubin v. Kohn,* 344 Ill. 166, 176 N.E. 259 (1931); *McGarvey v. Young,* 100 N.J.Eq. 174, 134 A. 744 (1926), *aff'd* 101 N.J.Eq. 302, 137 A. 918 (1927). There is some authority to the contrary. *E.g., Hays v. Sturgill,* 302 Ky. 31, 193 S.W.2d 648 (1946). However, in our view, such authority places its emphasis upon identity of issues, and is inconsistent with the modern distinction between claim preclusion and issue preclusion.

"Judgments establishing property rights fall within the ... clear need for repose." 18 C. WRIGHT, A. MILLER, & E. COOPER, *supra,* at 112. The parties in a quiet title action rightfully expect conflicting claims of ownership to be resolved. The very purpose of a quiet title action is to establish the security of title. Nothing could more profoundly disturb the security of title than for two judges, in separate actions involving the same parties, to enter contradictory decrees purporting to "quiet" title in the same property. Yet that is precisely what has occurred in the present case. A decree quieting title in Akins and Nesbitt, and affirmed by our Supreme Court in *Aldape I,* has been succeeded by another judgment in the district court purporting to quiet title in the Aldapes.

It cannot be gainsaid that the theory of accretion, upon which the Aldapes relied in the second action, was available during the first action. Both the theory of accretion and the theory of adverse possession offered in *Aldape I* grew out of the same central operative fact—the movement of the Boise River. Moreover, when *Aldape I* was on appeal in the Idaho Supreme Court, the attorney then serving as counsel for the Aldapes requested the Supreme Court to remand the case for consideration of the accretion theory. The Court properly declined to do so because that theory was first raised on appeal, and had not been present-

ed to the trial court. 98 Idaho at 914, 575 P.2d at 893. Finally, it is clear that the issue of accretion would have been ripe for adjudication when *Aldape I* was tried. The Aldapes have contended that the process of accretion along the Boise River occurred throughout this century. Proof of such accretion would have been no less feasible in *Aldape I* than in the instant case.

The Aldapes have suggested that it may have been tactically advantageous for them to try the accretion theory in an action separate from *Aldape I.* We need not probe the tactics of the parties. It is sufficient to say that we do not equate tactical advantage with a right to bring separate actions upon the same claim.

■ The Aldapes also have contended that accretion and adverse possession could not have been combined to form a convenient trial unit. It is true that some of the probative facts supporting one theory would not have been germane to the other. But this circumstance, by itself, would not have compelled bifurcation of a trial. The transcripts in this appeal and in *Aldape I* disclose short trials; consolidation would not have produced undue inconvenience.[2] In any event, whether to conduct a unified or bifurcated trial is a decision for the trial court to make, having been apprised of all the issues. The trial court would have no opportunity to make this decision if a litigant were permitted to try his claim piecemeal, submitting different theories in separate actions.

■ We conclude that the bar of claim preclusion, as described by our Supreme Court in *Joyce,* and as further developed in the Second Restatement, applies to this case. Accordingly, the judgment of the district court is reversed. Costs to appellants.

WALTERS, C.J., and SWANSTROM, J., concur.

2. A similar consolidation of issues occurred in *Nesbitt v. Wolfkiel, supra* note 1. In that case, both theories—adverse possession and accre-

tion—were presented at a single trial which apparently consumed less than one day.