776 P.2d 462

**Albert E. BLASER, Plaintiff–Appellant,**

v.

**Harvey A. CAMERON and Katherine M. Cameron, husband and wife, Defendants–Respondents.**

No. 17202.

Court of Appeals of Idaho.

June 26, 1989.

Jon N. Wyman of Wyman & Wyman, Boise, for plaintiff-appellant.

Michael J. Gaffney of Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, for defendants-respondents.

SWANSTROM, Judge.

This case presents an issue of law with respect to a rule of procedure. We are asked to decide whether a seller's claim for money due on a real estate contract should be barred for failure to plead it as a compulsory counterclaim in the buyers' earlier action for specific performance. We hold—contrary to the decision of the district court—that appellant's claim for money due on a real estate contract is not barred for failure to plead it in the earlier action. Accordingly, for reasons which follow, we vacate the judgment. We remand for a decision on the merits.

The pertinent facts are straightforward. In 1974 Albert Blaser as seller and Harvey and Katherine Cameron as buyers entered into a contract for the purchase of a lot and the construction of a cabin upon the lot. According to the contract, Blaser promised, among other things, to construct a cabin and supply it with water. The Camerons promised to pay $10,000 down and provide on-site labor for Blaser to offset any construction costs exceeding the down payment. The Camerons made the down payment, Blaser constructed the cabin and the Camerons took possession, at least temporarily. However, the parties became embroiled in a dispute over the water supply and a carpeting allowance. In June 1976 Blaser offered the Camerons three options for settling the dispute: (1) they could rescind the contract, (2) they could complete the purchase under the contract by paying a balance of $16,000 in construction costs, or (3) they could continue staying in other housing supplied by Blaser until an amount of rent accrued equivalent to the down payment.

The Camerons responded by bringing an action in July 1976 against Blaser for specific performance of his promise to provide an adequate water system. Blaser counterclaimed for damages to a well pump and for the reasonable value of rent for the housing the Camerons were living in. Blaser's counterclaim contained no allegation that the Camerons then owed him any money on account of the sale of the lot and the construction of the cabin. The trial court in the 1976 action found Blaser to be in material breach of contract for failing to provide an adequate water supply. Accordingly, judgment was entered directing Blaser to specifically perform his promise to provide an adequate domestic water system "within a reasonable time." As to Blaser's counterclaim, the court found that he had agreed the Camerons could reside in the apartment owned by Blaser, rent free, until water was provided to the cabin. The court also held there was no evidence to support Blaser's claim for damages to a well pump. The court dismissed the counterclaim.

Blaser eventually completed the water system. In 1982 he brought the present action to recover from the Camerons the balance of the construction costs owing under the sales contract. Following a non-jury trial, the district court concluded that the principle of res judicata barred Blaser's present claim because it should have been pled as a compulsory counterclaim in the 1976 action. Judgment dismissing Blaser's claim was entered and this appeal followed.

■■■ Compulsory counterclaims come within the purview of I.R.C.P. 13(a). The application of this procedural rule is a question of law on which we exercise free review. In pertinent part Rule 13(a) provides: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." The failure to plead a claim properly classified as a compulsory counterclaim bars any subsequent action on the claim. While this consequence is consistent with general principles of res judicata, subsequent actions on claims properly classified as compulsory under Rule 13(a) are barred simply by operation of the rule itself. *Joseph v. Darrar*, 93 Idaho 762, 472 P.2d 328 (1970).

■■■ Moreover, the above quoted language contains the first of four express exceptions to the general rule that a counterclaim is compulsory and must be asserted if it arises out of the same transaction or occurrence. A counterclaim falling under one of these exceptions will not be barred in future litigation. The first exception, and the one urged here, is that a party need not assert a counterclaim if it has not matured at the time of his pleading, even if it arises from the same transaction or occurrence. The application of this exception turns on whether the claim is one which the claimant could, at the date of his pleading in the earlier action, have maintained against the other party. *See* 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1411 (1971).

It is not disputed that Blaser's present claim and the subject matter of the Camerons' earlier action arose out of the same transaction or occurrence—the sales contract. The focus is on whether Blaser could have maintained an action for money owing under the sales contract at the time of serving his pleading in the 1976 action.

When Blaser filed his answer and counterclaim in the 1976 action he was in material breach of the contract and the trial court so found. Consequently, Blaser had no legal basis for a claim against the Camerons for money owing under the sales contract. Blaser would not have a legal basis for such a claim until he had completed his promised performance to supply adequate domestic water. *See* RESTATEMENT (SECOND) OF CONTRACTS § 232, illustration 2 (1981). Therefore, Blaser could not have maintained an action against the Camerons for money owing under the sales contract at the time of serving his pleadings in the 1976 action. The Camerons insist that Blaser had an actionable claim in 1976 because he believed they owed him money and he had requested payment of a set amount.[1] Blaser's assertion of money owed did not affect the determination of the time at which his claim matured; his assertion did not become an enforceable claim until he had fulfilled his obligations under the sales contract.

Furthermore, the policy behind Rule 13(a) is to avoid multiple lawsuits between the parties to a transaction or occurrence. This policy was not furthered here. Both sides have already presented the merits of their respective positions in a second trial only to have the action terminated on a procedural rule without reaching the merits of this extended controversy. Accordingly, we vacate the judgment and we remand for a decision on the merits.

We address a final issue raised by Blaser to clarify the proceedings on remand. After this action had commenced, but prior to trial, Harvey Cameron died. His estate was substituted as a party defendant. Blaser filed a notice of claim, based upon the money owing under the sales contract, against the estate of Harvey Cameron in a separate probate proceeding. No objection was made to the notice of claim. Blaser insists that the failure to object to his claim in the probate proceeding was tantamount in effect to a default judgment against the estate. We disagree.

It is unnecessary to present in a probate proceeding a notice of claim with regard to matters claimed in other judicial proceedings against the decedent pending at the time of his death. I.C. § 15-3-804(b). By parity of reasoning, it is unnecessary to object to such a contingent claim in the probate proceedings because a court, which already has jurisdiction over the matter, will determine the merits of the claim and of the legal and equitable defenses raised against it. Therefore, the notice of claim filed by Blaser against the estate of Harvey Cameron is of no present consequence to the current action.

The judgment is vacated. The case is remanded for a decision on the merits, but without prejudice to any defenses raised by the Camerons which have not been finally decided by the district court. Costs to Blaser. No attorney fees on appeal.

McQUADE, J. Pro Tem., concurs.

---

1. Agreeing with the Camerons' argument, the district court believed the following circumstances indicated that Blaser thought he had a mature claim. As stated earlier, shortly before the Camerons filed their action for specific performance in 1976, Blaser wrote the Camerons offering three different "options" by which the dispute could be settled. Two of the options called for rescission of the contract, one option called for payment of certain sums for the lot and for construction of the cabin. The Camerons also point to a "Vendor's Lien," filed by Blaser during the pendency of the first action, stating a sum "due" from the Camerons for the property which Blaser had already deeded to them. Blaser recorded this lien three months after he filed his answer and counterclaim. We are not convinced that either of these actions taken by Blaser in 1976 precluded him from arguing later that his claim was not "mature" when Blaser filed his answer in the earlier suit. *See Bennett v. Fidelity & Deposit Company of Maryland,* 98 Nev. 449, 652 P.2d 1178 (Nev. 1982); *cf. Chapin & Chapin, Inc. v. McShane Contracting Co., Inc.,* 374 F.Supp. 1191 (W.D.Pa. 1974).

BURNETT, Judge, specially concurring.

Although I agree with the result of the foregoing opinion, I write separately to comment on the relationship between res judicata and "premature" claims. My analysis is grounded in the modern version of res judicata as set forth in the RESTATEMENT (SECOND) OF JUDGMENTS (1982). Our Court adopted the Second Restatement in *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983) (petition for review denied).

Res judicata embraces two distinct doctrines: claim preclusion and issue preclusion. Under the doctrine of claim preclusion, a valid final judgment generally extinguishes a claimant's rights and remedies against a defendant "with respect to all or any part of the transaction ... out of which the action arose." Second Restatement at § 24. Claim preclusion subsumes the entire transaction, "regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the [claimant]...." Second Restatement at § 24 Comment a. Accordingly, the bar of claim preclusion is broad; it applies to any claim that was, or properly could have been, made in the first litigation. In contrast, issue preclusion (formerly known as collateral estoppel) is a narrow doctrine. It applies only to specific issues actually raised, litigated and decided in a prior lawsuit. Second Restatement § 27.

In the present case, the district judge did not specify which form of res judicata he was invoking when he dismissed Blaser's complaint. Blaser sought a monetary award for materials and labor allegedly furnished to construct a cabin. No dispute over these construction costs had been litigated in the prior lawsuit. Accordingly, the doctrine of issue preclusion could not

have been applied here. Neither had Blaser made a claim in the first lawsuit for any unpaid obligation arising from construction of the cabin. Consequently, the doctrine of claim preclusion was not triggered by a prior claim. The remaining question is whether claim preclusion might have been applicable because such a claim *could* have been made in the prior litigation. That question is central to this appeal.

My colleagues have approached the question obliquely by focusing upon the compulsory counterclaim language of I.R.C.P. 13(a). They suggest that any bar to Blaser's claim would arise solely from the rule itself, not from res judicata. I respectfully disagree. In my view, Rule 13(a) and res judicata cannot be severed from each other. The rule, standing alone, contains no language stating that a party who fails to make a compulsory counterclaim is barred from making the claim in a subsequent lawsuit. The rule impliedly contains such a bar only because it operates in the context of res judicata.[1] Moreover, even if Rule 13(a) and res judicata were somehow separated, the lead opinion's determination that Blaser's claim was *not* barred by the rule would still leave open the possibility that the claim was "separately" barred by res judicata.

Thus, the question of res judicata, in the form of claim preclusion, must be addressed. Blaser's claim appears on its face to be one he could have made in the prior litigation. The first lawsuit was filed in 1976 and decided in 1977. Blaser asserted at that time, and he later testified in the present action, that construction of the cabin was completed in 1975. Accordingly, the doctrine of claim preclusion would seem to be applicable.

However, claim preclusion is subject to several exceptions enumerated in the Second Restatement and in *Aldape*. When we

1. The lead opinion cites *Joseph v. Darrar*, 93 Idaho 762, 472 P.2d 328 (1970), for the proposition that Rule 13(a) operates independently of res judicata. However, *Darrar* antedates our *Aldape* decision and the Second Restatement. Prior to *Aldape*, the operation of res judicata had become confused because some Idaho cases purportedly limited res judicata to the relitigation of "causes of action." In *Aldape* we rejected this outmoded limitation. I view *Darrar* as an early attempt to break away from the confusion that once surrounded res judicata. *Darrar* should not be regarded today as authority for severing Rule 13(a) from the modern version of res judicata.

adopted the Second Restatement, we noted a "ripeness limitation and [a] mandamus exception ... enunciated by our Supreme Court [in prior cases]." *Aldape*, 105 Idaho at 259, 668 P.2d at 135. The ripeness limitation refers to a claim that arises from the same transaction as an earlier lawsuit, but which is not actionable until additional facts have developed. It is analogous to a ball resting atop a stairway—its potential energy becomes kinetic only when some event pushes it over the edge.

Here, the lead opinion identifies no missing *factual* event or circumstance necessary to push Blaser's claim over the edge. Rather, the lead opinion suggests that the claim was legally premature because the judge eventually ruled that Blaser had not installed a water delivery system according to the parties' contract. The lead opinion appears to assume that it would have been procedurally improper for Blaser to seek, during the litigation on the water system, a determination of his eventual right to recover cabin construction costs. The correctness of that assumption is not self-evident to me. Although my colleagues cite a Nevada case and a federal district court case as examples of procedural prematurity, those cases actually discuss principles of issue preclusion not apposite here.

The focus in this case should be upon the factual maturity of Blaser's claim during the first lawsuit. When that focus is adopted, it invites attention to an important element of the parties' contract. The contract provided that any construction costs resulting in a total obligation in excess of a $10,000 payment by the Camerons would be "paid for by labor performed by [the Camerons]." The record discloses that this "labor" was contemplated to be services performed by Mr. Cameron after he and his wife moved into the cabin. The Camerons did not move into the cabin prior to or during the first lawsuit—nor could they

have done so—because there was no water. Consequently, there was no timely opportunity for Mr. Cameron to "pay" for cabin construction costs with his services. Any claim by Blaser in the first lawsuit that the Camerons had breached the contract, entitling him to a monetary recovery, would have been factually premature. It was not until 1979, two years after the first lawsuit had gone to judgment, that the water system was functional. Thereafter, and not sooner, Mr. Cameron would have been obliged to perform the "labor" envisioned by the contract.

Because Blaser's claim did not become *factually* mature until the occurrence of an event after the first litigation, this case falls within the ripeness limitation on claim preclusion, as noted in *Aldape*.[2] For this reason, I join my colleagues in their "bottom line" conclusion that the claim was not barred in the present suit.

---

2. This case also may fall within one of the exceptions to claim preclusion found in the Second Restatement itself. Section 26(f) recognizes an exception where the prior litigation has "fail[ed] ... to yield a coherent disposition of the controversy." In the first lawsuit, as noted above, Blaser did not, and could not, make any claim premised upon Mr. Cameron's failure to

perform "labor" as contemplated in the agreement. That claim remained inchoate for some time after judgment was entered in the first lawsuit. If the instant case were dismissed without reaching the merits, this claim never would be resolved. Consequently, there would be a "failure to achieve a coherent disposition of the controversy."