804 P.2d 319

**Peter DIAMOND, an individual,
Plaintiff-appellant,**

**v.**

**FARMERS GROUP, INC., a corporation; Farmers Insurance Company of Idaho, a corporation; Farmers Insurance Exchange, a corporation; Mid–Century Insurance Company, a corporation; Truck Insurance Exchange, a corporation; Fire Insurance Exchange, a corporation; Farmers New World Life Insurance Company, a corporation; and Donald D. Raney, an individual, Defendant-respondents,**

**and**

**John Does One through Ten, individuals; and John Doe Corporations One through Ten, dba Farmers Insurance Company, Defendants.**

**No. 17930.**

Supreme Court of Idaho,
Boise, September 1990 Term.

Dec. 31, 1990.

Hansen, Beard, Martin & St. Clair, Idaho Falls, and Markowitz, Herbold, Stafford & Glade, Portland, Or., for plaintiff-appellant. Hollis K. McMilan argued.

Elam, Burke & Boyd, Boise, and Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant-respondents.  J. Ray Durtschi argued.

BAKES, Chief Justice.

Plaintiff-appellant (Diamond) brought suit in Idaho against corporate defendant-respondents (Farmers Insurance Group, *et al.*) and defendant respondent Raney (an agent of Farmers) for slander, interference with business relations, inducement of breach of contract, conspiracy, the tort of outrage, and punitive damages.  Thereafter, Diamond brought suit against Farmers in Oregon for, *inter alia,* breach of contract and fraud.  Diamond won the suit in Oregon and recovered substantial damages.  Subsequently, summary judgment was granted in favor of Farmers by the district court in Idaho on the grounds of *res judicata,* based upon the Oregon judgment.  Diamond appeals this ruling.  Additionally, a partial summary judgment was granted on Diamond's claim against respondent Raney on the basis that Raney was entitled to a defense of conditional privilege fixing the legal standard for that defense.  This Court granted Diamond leave to appeal by certification from the grant of partial summary judgment in favor of Raney.  The two appeals have been consolidated.

Diamond is a private investigator.  In December, 1980, Diamond orally contracted with Farmers Insurance to conduct investigations on behalf of all the corporate defendants.  The geographical area to be covered by Diamond's investigations included Oregon, Idaho, Washington, Utah and Montana.  Farmers agreed to assign to Diamond all investigations which were assigned to outside investigators for a period of five years from December of 1980.  In reliance upon this contract with Farmers, Diamond substantially enlarged his operations, which included opening new office space in Portland, Seattle, Boise and Pocatello.

Defendant Donald Raney was a regional manager for Farmers for the Pocatello region.  Raney learned that Diamond would be conducting investigations in his region and expressed his displeasure about this fact to George Hopkins, home office manager for Farmers for the Pocatello region.  On September 15, 1982, Raney allegedly told Hopkins that he, Raney, had previously fired Diamond for being a thief and that all Diamond did while working for Farmers was to stay in ritzy motels and drive Cadillacs.  Similar remarks were conveyed by Raney to Merrill Fry, an investigator for Farmers.

In the next several years Diamond received less investigatory work from Farmers.  Diamond alleged that Farmers repeatedly represented that he would continue to have all the investigatory work originally promised; however, Farmers had actually been assigning less work to Diamond.  Eventually, Farmers terminated its contract with Diamond.

Diamond filed suit against Farmers and Raney in Idaho on September 14, 1984.  Diamond asserted claims for defamation, interference with business relations, inducement of breach of contract, conspiracy, the tort of outrage, and punitive damages.  On September 19, 1984, Diamond brought suit against Farmers in federal district court in Oregon asserting claims for breach of contract, fraud, and punitive damages.  Jurisdiction in the Oregon case was based upon diversity of citizenship.  Raney was not joined as a defendant in the Oregon case.  In the Oregon case, a default judgment as to liability was entered against Farmers as a sanction for discovery abuses.  An evidentiary hearing was held as to damages, and Diamond recovered a judgment in the Oregon case for $1,886,635.00.

Thereafter, Farmers and Raney jointly filed motions in the Idaho action to dismiss,

for summary judgment, and for partial summary judgment. The district court ruled that Farmers was entitled to summary judgment dismissing the entire action against all the Farmers corporate defendants under the doctrine of *res judicata.*

Raney subsequently filed a supplemental motion for summary judgment based on the defense of conditional or qualified privilege to the defamation claim. The trial court rendered a second memorandum decision granting the motion in part, ruling that Raney was entitled to a conditional privilege, but that a jury issue remained as to whether the privilege had been abused by Raney acting intentionally or with reckless disregard for the truth.

Initially, Diamond raised two issues on appeal: (1) whether summary judgment dismissing all corporate defendants based upon *res judicata* was reversible error, and (2) whether the trial court's summary judgment ruling that the qualified privilege may be abused only if Raney acted intentionally or with reckless disregard for the truth or falsity of the statements was reversible error. Diamond conceded at oral argument that the conditional privilege issue was disposed of by our recent holding in *Wiemar v. Rankin,* 117 Idaho 566, 790 P.2d 347 (1990). Accordingly, we address only the *res judicata* issue on this appeal.

With respect to the issue of *res judicata,* the trial court granted defendant's motion for summary judgment on the basis that Diamond's slander claim in Idaho was barred by the preclusive effect of *res judicata* stemming from the suit in Oregon. The trial court reached its conclusion based on the holding of our Court of Appeals in *Aldape v. Akins,* 105 Idaho 254, 668 P.2d 130 (Ct.App.1983).

Diamond argues that the trial court misapprehended the holding in *Aldape* and should, as a consequence, be reversed. Specifically, Diamond contends that the trial court mistakenly believed that Raney's slanderous comments precipitated the breach of contract and fraud by the corporate defendants and therefore led the trial

court to the erroneous conclusion that the Oregon and Idaho actions grew out of the same "transaction or series of transactions."

Diamond also asserts that he could not have brought the slander action in Oregon because the statute of limitations for torts had run in Oregon; and that joining the slander claim in the Oregon action would have necessitated bringing two separate suits, because Oregon would not have had personal jurisdiction over Raney. We address each of these contentions in turn.

In *Aldape v. Akins,* 105 Idaho 254, 668 P.2d 130 (Ct.App.1983), the Idaho Court of Appeals chronicled the development of the doctrine of *res judicata* in Idaho. There, the court observed, "The modern doctrine of *res judicata,* with its broad component of claim preclusion, has been a product of evolution." 105 Idaho at 257, 668 P.2d at 133. This evolution can be traced back to this Court's early landmark holding in *Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 553, 208 P. 241, 242–243 (1922). In *Joyce* this Court stated:

> We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.

Since our decision in *Joyce,* this Court has from time to time expanded upon that decision. For instance, In *Ramseyer v. Ramseyer,* 98 Idaho 554, 569 P.2d 358 (1977), this Court cited with favor comment a to § 61 of the Restatement (Second) of Judgments for the proposition that, "The law of *res judicata* now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." 98 Idaho at 556, 569 P.2d at 360. Following *Ramseyer,* this Court again invoked the Restatement in defining the precise contours of the phrase "the same claim" used in *Joyce.*[1] Thus, in

---

1. Idaho typifies the struggle a number of jurisdictions have undergone in an attempt to define

*Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 446, 649 P.2d 1197, 1202 (1982), we stated that, "The 'sameness' of a cause of action for purposes of application of the doctrine of *res judicata* is determined by examining the operative facts underlying the two lawsuits. Restatement (Second) of Judgments, § 61, Comment a (Tent.Draft No. 1 1973)."[2]

In other cases this Court has recognized certain unique situations where the *Joyce* rule was not applicable. For example, in *Heaney v. Bd. of Trustees of Garden Valley School Dist. No. 71*, 98 Idaho 900, 575 P.2d 498 (1978), we created an exception to the *Joyce* rule for cases in which mandamus and damages are sought as alternative or cumulative forms of relief. In *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983), we held the bar of *res judicata* not applicable where matters raised in the second suit were not ripe for adjudication in the prior action. More recently, in *Nash v. Overholser*, 114 Idaho 461, 757 P.2d 1180 (1988), we created yet another exception to the *Joyce* rule, noting that "mandatory joinder of tort claims with equitable divorce proceedings may be undesirable, as well as unfair." 114 Idaho at 462, 757 P.2d at 1181.

The foregoing cases demonstrate this Court's willingness to adapt the common law to the changing needs of our jurisprudence where such change is perceived to be desirable. Such was the case in *Aldape*, where our Court of Appeals, dissatisfied with the lack of precision generated by the amorphous concept of the "same claim" or "cause of action," stated: "We believe the time has come in Idaho to state the doctrine of *res judicata* in terms free from the

recrudescent trappings of a cause of action." 105 Idaho at 258, 668 P.2d at 134. It was that dissatisfaction and corresponding desire for change that prompted the *Aldape* court to "adopt" the Restatement "with its definitive treatment of claim preclusion...." 105 Idaho at 259, 668 P.2d at 135.

As a general matter, we agree with the Court of Appeals that the *Joyce* Court's reference to the "same claim," by itself, does not provide sufficient guidance for applying the doctrine of *res judicata*, and that the "same transaction or series of transactions" rule, contained in Section 24 of the Restatement and comment a thereto, is a more precise analytical rule. However, we do not go so far as our Court of Appeals in adopting the entire Restatement, with all its attendant baggage, in order to resolve the lack of precision inherent in the concept of the "same claim."

Rather than categorically adopting an entire chapter of the Restatement, this Court has consistently displayed its preference for selectively examining various sections and comments from the Restatement, and thereafter adopting, citing favorably, or rejecting the provision, as the occasion warrants. *See e.g., Shields v. Morton Chemical Co.*, 95 Idaho 674, 518 P.2d 857 (1974) (adopting Section 402A, Restatement (Second) of Torts, without adopting all the comments thereto); *Toner v. Lederle Laboratories*, 112 Idaho 328, 732 P.2d 297 (1987) (adopting comment k to Section 402A and noting that "courts must decide the applicability of comment k case by case, and only after taking evidence related to the various factors" related to the comment); *Idaho*

the parameters of the term "the same claim" and thereby produce a definition that would effectuate the policies that underlie the doctrine of *res judicata*. This is so because the preclusive effect of a judgment turns upon the scope of the claim or cause of action. The problem has therefore been how to determine the scope of a claim. Our original holding in *Joyce v. Murphy, supra*, provided little guidance on that issue. Consequently, subsequent cases have looked to the Restatement for guidance. *See, e.g., Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982); *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App. 1983). *See also* Trautman, Claim & Issue Pre-

clusion in Civil Litigation in Washington, 60 Wash.L.Rev. 805 (1985) (discussing the vicissitudes of the Washington courts in an attempt to determine and define the scope of a cause of action for purposes of *res judicata* ).

2. The emphasis in Section 61 on claims that arise out of the same "operative facts" in the 1973 version of the Restatement was a forerunner to Section 24 and its use of the phrase "the same transaction or series of transactions" adopted by the drafters of the Restatement in 1982.

*Bank & Trust v. First Bancorp*, 115 Idaho 1082, 772 P.2d 720 (1989) (declining to adopt the Restatement standard regarding liability of a professional for negligent misrepresentation). This approach provides us with an opportunity to thoroughly explore the advantages and disadvantages of any given section on a case by case basis, where it may be examined in the context of a specific set of facts. *Toner v. Lederle Laboratories*, 112 Idaho 328, 732 P.2d 297 (1987).[3]

In many respects the provisions of the Restatement are merely an elaboration on our earlier case law. For example, in our seminal case of *Joyce v. Murphy Land Co.*, 35 Idaho 549, 208 P. 241 (1922), we held "the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit." 35 Idaho at 553, 208 P. at 215. Similarly, Section 19 of the Restatement (Second), approved by the Court of Appeals in *Aldape*, provides that, "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim."

With regard to the "same claim or demand" language, the *Joyce* Court held that a prior adjudication precludes the relitigation of a "point [which] was not presented upon the former trial, [but] was necessarily involved...." 35 Idaho at 553, 208 P. at 215. The Restatement (Second), in Section 24, similarly precludes a second action with regard to claims which were necessarily involved as part of the transaction or series of transactions out of which the action arose.[4]

■ We approve the Court of Appeals holding in *Aldape* that a valid and final judgment rendered in an action extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose. The crucial question here, then, is whether the slander claim asserted by Diamond in the Idaho action arose out of the same transaction or series of transactions that gave rise to the action in Oregon. If so, the Idaho action would be barred by the doctrine of *res judicata.*

With respect to this question, the trial court stated:

Plaintiff's action against defendants for both the Oregon and Idaho cases arose in the beginning from alleged slanderous statements made by individual defendant Donald Rainey which accused plaintiff of being a thief. The alleged slanderous statements are a direct basis for the Idaho action. The statements, although not a direct stimulus to the Oregon action, were closely related. From the record it appears that defendants' breach of the parties' employment agreement was caused by dissemination to Farmers Insurance individuals of information contained in the alleged slanderous statements. That is, the breach of contract and related action in Oregon resulted once the alleged slanderous information supplied to Farmers Insurance individu-

---

3. The common law, like an ongoing novel of fiction, is best written a single sentence at a time. In such wise, the judge, like the author, is not surprised by the ending.

4. The Restatement, in Section 24, clarifies the dimensions of the "same claim" rule, adopting a transactional approach.

When a valid and final judgment rendered in an action extinguishes the plaintiff's claim ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose.
....

What factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. Comment a to § 24 further explains the concept of a claim by stating:

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff....

als by individual defendant Donald Rainey was disseminated through the Farmers Insurance corporate channels. In other words, both the Idaho and Oregon actions arose from defendant Donald Rainey's statements, or from a "series of connected transactions," out of which the action(s) arose.

■ Diamond contests this holding of the trial court, arguing that the Oregon action did not stem from the Raney statements. However, Diamond's argument is not supported by the record. In fact, Diamond failed both in his brief and at oral argument to supply any specific factual basis for his assertion that the Oregon action did not arise from the Raney statements. A review of the record demonstrates that the Raney statements were significant factors—perhaps the most significant factors—in the corporate defendants' gradual curtailment of Diamond's business which ultimately led to his termination. The record also reveals that Diamond himself relied on the statements made by Raney in the Oregon case as a basis for his fraud claim and the claim that Farmers did not honor its contract with Diamond, and his damage claim that his loss of business was a consequence of the Raney statements. Viewed pragmatically, the alleged slanderous statements made by Raney to his superiors at Farmers, which are the subject of the Idaho action, were necessarily involved in the Oregon action, *Joyce v. Murphy Land Co.*, 35 Idaho at 553, 208 P. 241, and were part of the same operative facts in the Oregon action, *Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982), and were part of the "same transaction or series of transactions that gave rise to both suits." *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983); Restatement of Judgments (Second), § 24. Accordingly, "the former [Oregon] adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter ['point'] which might and should have been litigated in the first [Oregon] suit." *Joyce v. Murphy Land Co.*, 35 Idaho at 553, 208 P. 241.

Finally, Diamond argues that the lower court erred because, he contends, the Oregon court would not have been able to assert jurisdiction over Raney and because the statute of limitations for a tort claim against Farmers had run in Oregon. As to the first argument, while the Oregon court may not have had personal jurisdiction over Raney, the Oregon court did have jurisdiction over Farmers, and Diamond's slander claim against Farmers could and should have been litigated in that action. *Joyce v. Murphy Land Co., supra; Houser v. Southern Idaho Pipe & Steel, Inc., supra; Aldape v. Akins, supra.* While Diamond's slander claim against Raney is still pending in the Idaho courts and will be adjudicated here, the Oregon suit by Diamond against Farmers concludes all claims of Diamond against Farmers, "not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the [Oregon] suit," including all "point[s]" which were "necessarily involved" but "not presented upon the former trial." *Joyce v. Murphy Land Co.*, 35 Idaho at 555, 208 P. 241.

■ With respect to Diamond's final claim that the statute of limitations had run in Oregon on Diamond's slander claim against Farmers, and therefore he was not able to bring the slander claim in the Oregon action, we find that argument to be unpersuasive in this case. First, the statute of limitations defense is not jurisdictional; had the action been timely filed in Oregon, the slander issue could and would have been litigated in Oregon. Diamond should not be permitted to circumvent the *res judicata* effect of the Oregon judgment by asserting that he could not bring the claim in Oregon because he neglected to file the action before the statute had run. The policy considerations undergirding the doctrines of *res judicata* and collateral estoppel, as discussed above, preclude the splitting of the same transactional claim into discrete substantive theories or variant forms of relief flowing from those theories. Having chosen the Oregon forum, Diamond was required to file all claims stemming

152

from the transaction in the Oregon federal court, even though the slander portion of the claim was untimely because of failure to file within the statute of limitations.

The judgment of the district court is affirmed. Costs to respondent. No attorney fees allowed.

JOHNSON, J., and BECKER and SCHWARTZMAN, JJ. Pro Tem., concur.

BISTLINE, Justice concurring in the result.

While I concur in the result of the Court's analysis, I pause to question whether the analysis sufficiently addresses the issues.

The Court agrees with the district court in according *res judicata* effect to a foreign judgment which adjudicated nothing, and had nothing to adjudicate. There was no trial on the merits. The damage award was a sanction imposed upon Farmers Insurance, which to my understanding was imposed for the Farmers' abuse of discovery proceedings. This can hardly be termed a determination on the merits.

The Court referred to Judge Burnett's scholarly opinion in *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983), in utilizing the doctrine of *res judicata*. Strangely, going unmentioned is the statement in *Aldape* that *res judicata* will apply only to judgments entered on the merits, after a trial:

> Having been *defeated on the merits in one action*, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions, and accordingly the second action should be held barred.

*Aldape*, 105 Idaho at 259, 668 P.2d at 135 (quoting with approval from the Restatement (Second) of Judgments (1982); emphasis added).

Better that the Court's opinion would provide some discussion and analysis how

it is that entry of a default judgment for discovery abuses works a preclusive effect that serves the three purposes of *res judicata*. *Aldape*, 105 Idaho at 257, 668 P.2d at 133. First, does it preserve respect for the judiciary by preventing the litigation of the same claim more than once, with the potential for inconsistent results? Of course not, because the first time around, no issues were litigated to a final result. Second, does giving a default judgment preclusive effect protect the court system from repetitious litigation? There is no repetition when there was no first time around, and the second time around is aborted through no fault of the plaintiff. Third, does it protect parties from the specter of repetitive and harassing claims? Perhaps so, but one cannot term something harassment when the defendant might be getting what is coming to it.

Another problem besetting me revolves around jurisdiction, and the fact that Raney was not being sued in the Oregon federal court litigation, which seemingly is used against Diamond. While making no claim as to its validity, the thought which has occurred is that Farmers was likely in as good a position as Diamond to bring Raney into the Oregon action.