829 P.2d 532

**Wayne CROWN, Clark Bean and Steve Bean, Plaintiffs–Appellants,**

v.

**KLEIN BROS., Defendant–Respondent,**

and

**Hawkins Co., Ltd., an Idaho corporation, and the Department of Agriculture of the State of Idaho, and Gerry Hawkins, Robert Blass and William Nungester, as director of Hawkins Co., Ltd., & John Does 1–10, Defendants.**

No. 19044.

Court of Appeals of Idaho.

Nov. 29, 1991.

Rehearing Denied Feb. 28, 1992.

Petition for Review Denied May 21, 1992.

Lloyd J. Walker, Twin Falls, for plaintiffs-appellants.

Cosho, Humphrey, Greener & Welsh, Boise, for defendant-respondent. Joseph M. Meier, argued.

SILAK, Judge.

In this class action the parties dispute the ownership of bean proceeds. Appellants, a group of bean growers (the Growers), stored the beans in question in a commodities warehouse owned and operated by Hawkins Co. Ltd. (Hawkins). Respondents, Klein Bros. Ltd. (Klein), purchased the beans from Hawkins and sold and shipped the beans to subsequent buyers. Hawkins subsequently filed a Chapter 11 petition in bankruptcy. In district court, the Growers claimed to be the true owners of the beans sold to Klein on the grounds that Hawkins could not have given Klein good title to the beans. Klein asserted that (1) the Growers' claim of ownership was, or should have been, decided during Hawkins' bankruptcy proceeding to which the Growers were parties and, therefore, the Growers are barred by *res judicata* from relitigating their claim of ownership in state court, and (2) Klein acquired good title to the beans because the Growers entrusted possession of the beans to Hawkins, a merchant who deals in goods of that kind, giving Hawkins power to transfer the Growers' title to Klein, a buyer in the ordinary course of business. The district court granted Klein's motion for summary judgment on *res judicata* grounds, and the Growers appeal. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

The Growers are a class made up of hundreds of bean growers who stored beans from their crops in Hawkins' agricultural commodity warehouse. By 1988 Klein, a company that purchases and distributes large quantities of commodities, had been purchasing beans from Hawkins for approximately nine years. Between May and November of 1988, Klein purchased 60,836.40 cwt. of beans from Hawkins. Klein's custom was to leave the beans in storage at Hawkins' warehouse until Klein could sell the beans to one of its customers, at which time Klein would have the beans shipped from the warehouse to the customer.

In late November of 1988, the Idaho Department of Agriculture (IDA) audited Hawkins' warehouse and found that it lacked sufficient inventories to meet its outstanding obligations. The IDA then applied to the District Court of the Fifth Judicial District of the State of Idaho for an order to seize Hawkins' warehouse and its contents.

On December 1, 1988, the Growers filed a complaint against Hawkins, the IDA and others seeking to recover the beans they had stored in Hawkins' facilities. On December 8, 1988, the district court issued an order allowing the IDA to take possession of Hawkins' warehouse, as well as the beans that remained there in storage. At the time of seizure 42,902.60 cwt. of the beans purchased by Klein since May had already been sold and shipped to Klein's customers (shipped beans), while 17,933.80 cwt. of the beans remained in storage at Hawkins' facilities. After seizure of the warehouse, Klein filed a lien on the 17,-933.80 cwt. of beans which it had pur-

chased from Hawkins but not yet sold and shipped to customers.

On January 5, 1989, the Growers filed a second amended complaint, adding Klein as a defendant and requesting the court to find that Klein had no ownership interest in the beans which remained in storage at Hawkins' warehouse. The Growers' complaint did not seek any relief against Klein for the shipped beans. For those beans, the Growers' complaint sought relief against Hawkins, alleging that Hawkins had converted the beans and their proceeds to Hawkins' own use.

On January 6, 1989, Hawkins filed a Chapter 11 petition in bankruptcy, whereupon the Growers' state court action was stayed. Throughout the bankruptcy proceedings Hawkins was a debtor in possession. As debtor in possession, Hawkins had the duty and the power to unwind any improper transfers made by the debtor for the benefit of the estate. In this capacity, the debtor in possession represented the creditors of the estate, with the power to sue one creditor for the benefit of others.

On January 20, 1989, the Growers initiated an adversary proceeding in the bankruptcy court. In this adversary proceeding the Growers sought the same relief against Klein that they had sought in their state court action: that Klein be adjudged to have no interest in the beans that remained in storage at Hawkins' warehouse. As to the shipped beans, the Growers again sought relief by alleging conversion by Hawkins.

In the bankruptcy proceeding, at least two Chapter 11 reorganization plans were proposed by the parties—the Greenwood Plan and the Melanson Plan. Both reorganization plans divided the bankrupt estate into two estates, a § 557 estate and a § 541 estate. Under both plans the divided estates were essentially the same. The § 557 estate consisted of all the beans remaining in Hawkins' warehouse at the date of filing the debtor's petition and all the proceeds of those beans, together with any proceeds of bonds on those beans. The § 554 estate consisted of all assets of the bankrupt estate except § 557 assets, expressly includ-

ing any rights of the debtor in possession to recover money or property for the benefit of the estate.

The Greenwood Plan proposed a method for distributing the § 557 estate among the creditors while converting the § 541 estate into a Chapter 7 proceeding in which a third-party trustee would be appointed to administer and liquidate the § 541 assets. Under this Plan, the appointed trustee, after distribution of the § 557 estate, would have had the power to unwind fraudulent conveyances made by Hawkins prior to the bankruptcy, including the allegedly fraudulent conveyances to Klein which the Growers now contest.

The Melanson Plan similarly defined the assets of the § 557 and § 541 estates, but it went further in listing the monetary value of each of the assets of the § 541 estate. In valuing the assets of the § 541 estate, the Melanson Plan expressly stated that the right of the debtor in possession to recover money or property on behalf of the estate was valued at zero. The Melanson Plan also differed from the Greenwood Plan in that while it proposed to distribute the § 557 estate, it also proposed to liquidate and distribute the § 541 estate, thus bringing any and all claims in the matter to a speedy and equitable conclusion. The Disclosure Statement accompanying the Melanson Plan provided in part:

The plan provides a formula and method for distributing § 557 assets to the owners while, at the same time, *bringing all claims in this matter to a speedy and equitable conclusion.* The advantage of this plan over alternatives is that this plan results in a fair and equitable distribution of bean proceeds to the 1988 and prior year growers and brings any and all claims by Hawkins Co. Ltd., or its successors against growers to an end. *It is the purpose of this plan to settle all disputed questions and conclude the distribution process with a minimum of delay and expense.* (Emphasis added.)

Ultimately, the Greenwood Plan was rejected, and although the Growers filed an objection to the Melanson Plan, the Melan-

son Plan was accepted in writing by the creditors and equity security holders whose acceptance was required by law. On December 21, 1989, the bankruptcy court confirmed the Melanson Plan. No one, including the Growers, appealed the order confirming the Melanson Plan. In fact, the Growers accepted and received their pro rata distribution of the § 557 and § 541 estates as provided by the Plan.

On July 6, 1990, the Growers filed a third amended complaint in their action against Klein in the state district court. On the same day, the district court entered an order certifying the case as a class action. On September 6, 1990, Klein filed a Motion for Summary Judgment against the Growers on two grounds: (1) that following confirmation of the Melanson Plan by the bankruptcy court, the Grower's claim was barred as *res judicata*, and (2) under I.C. § 28–2–403, Klein acquired good title to the beans because the Growers entrusted possession of the beans to Hawkins, a merchant who deals in goods of that kind, giving Hawkins power to transfer good title to Klein, a buyer in the ordinary course of business. On November 30, 1990, the district court, without deciding the entrustment issue, granted Klein's motion for summary judgment on *res judicata* grounds.

## II. ISSUE ON APPEAL

On appeal, we must decide whether, based on the uncontroverted facts, the Growers' claim against Klein is barred as a matter of law under the principle of *res judicata*.[1]

## III. STANDARD OF REVIEW

On appeal, the Growers ask us to reverse the district court's order granting Klein's motion for summary judgment. Whether to grant a motion for summary judgment is a question of law, which we review freely, applying the same standards that the district court was required to apply. The standard for granting summary

judgment is set forth in I.R.C.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The application of this standard is applied somewhat differently in cases, such as this one, where the matter is tried to the court without a jury.

> In general, a party resisting a motion for summary judgment is entitled to a favorable view of conflicting evidence and to the benefit of all reasonable inferences. *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982). A limited exception applies to cases governed by *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). In *Ritchie* our Supreme Court held that if an action will be tried before the court without a jury, the judge is not constrained to draw inferences in favor of the party opposing a motion for summary judgment. Rather, the judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts. *Id.* at 519, 650 P.2d at 661.

*Blackmon v. Zufelt*, 108 Idaho 469, 470, 700 P.2d 91, 92 (Ct.App.1985). Therefore, our task on review is to determine whether, based on the most probable inferences to be drawn from the uncontroverted facts, Klein was entitled to judgment as a matter of law on either of the grounds asserted by Klein.

## IV. RES JUDICATA

The doctrine of *res judicata* holds that a judgment, once rendered, constitutes the full measure of relief on a claim between the same parties or their privies on the same cause of action. *Williams v. Christiansen*, 109 Idaho 393, 397, 707 P.2d 504, 508 (Ct.App.1985). Pursuant to this

---

**1.** Although the issue whether Klein acquired good title to the shipped beans under § 28–2–403 has been raised by the parties, our holding on the *res judicata* issue eliminates the need to address that issue on appeal.

rule, we must determine two questions: (1) whether the order of confirmation issued by the bankruptcy court is a "judgment" entitled to the preclusive effect of *res judicata*, and (2) if the confirmation order does have the preclusive effect of a judgment, whether the Growers' current claim to the "shipped beans" is included within the preclusive scope of that judgment.

### A. Applicability of *Res Judicata* to the Confirmed Reorganization Plan.

 A plan confirmed by the bankruptcy court has the effect of a final judgment rendered by a federal district court. *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358 (5th Cir.1972). When no appeal is taken on an order confirming a reorganization plan, that order is generally regarded as one entitled to full faith and credit by other courts, and any attempt by the parties or those in privity to relitigate any matter raised or which could have been raised in the bankruptcy proceedings is barred under the doctrine of *res judicata*. *In Re Sanders*, 81 B.R. 496, 498 (Bankr. W.D.Ark.1987). Additionally, we note that confirmation of a reorganization plan binds the debtor and all creditors to the terms of the plan, whether or not they accepted the plan. *Sanders*, 81 B.R. at 498; 11 U.S.C.A. § 1141(a) (West 1979).

 In this case, final judgment resulted when the bankruptcy court confirmed the Melanson reorganization plan on December 22, 1989. This plan could have been revoked at any time prior to 180 days after the date of the entry of the order of confirmation. 11 U.S.C.A. § 1144 (West 1979). Further, the order confirming a plan is a final order, subject to appeal under the provisions of Bankruptcy Rule 8001(a). *Maiorino v. Branford Savings Bank*, 691 F.2d 89, 91 (2d Cir.1982). The Growers did not attempt to revoke the plan nor did they appeal from the order of confirmation. In fact, the Growers received and accepted their pro rata distributions as provided under the plan. Based on these facts and the above-cited rules, we hold that: (1) the Growers were bound by the terms of the Melanson Plan, (2) the con-

firmed plan was a final judgment entitled to full faith and credit by the Idaho district court, and (3) the confirmed plan carried the same preclusive force as other judgments under the principles of *res judicata*.

### B. Scope of Preclusive Effect.

Our Supreme Court recently discussed the issue of when a claim is within the preclusive scope of a prior claim. *Diamond v. Farmers Group*, 119 Idaho 146, 804 P.2d 319 (1990). In *Diamond* the Court stated:

> [T]he correct rule [is] that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.

*Diamond*, 119 Idaho at 150, 804 P.2d at 323. While the above language from *Diamond* states the general rule of *res judicata*, or claim preclusion, it does not answer the more particular question of when a claim is the "same claim or demand" as one brought in a former adjudication between the same parties. In *Diamond*, the Court articulated a fact-based transactional approach for resolving the "same claim or demand" issue, stating:

> "The 'sameness' of a cause of action for purposes of application of the doctrine of *res judicata* is determined by examining the operative facts underlying the two law suits. [Citation omitted.]
>
> . . . .
>
> [A] valid and final judgment rendered in an action extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose."

*Diamond*, 119 Idaho at 149–50, 804 P.2d at 322–23. In order to further clarify the meaning of this "same transaction or series of transactions" test, the *Diamond* Court quoted the following analysis from Comment *a* to Section 24 of the Restatement of Judgments:

> What factual grouping constitutes a "transaction" . . . [is] to be determined

pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

. . . .

The present trend is to see claim [sic] in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff. . . .

*Diamond,* 119 Idaho at 150, 804 P.2d at 323 n. 4.

Pursuant to the above rules, Klein was entitled to summary judgment on *res judicata* grounds if, based on the uncontroverted facts, the Growers' current claim for the shipped beans is the "same claim or demand" as a claim that either: (1) was actually litigated against Klein in the bankruptcy action, or (2) could and should have been litigated against Klein in the bankruptcy action.

The Growers' current claim is set forth in their third amended complaint as follows:

Klein Brothers purchased and received approximately 110,000 cwt during this period of time. Said beans having been embezzled by the Hawkins Co.

That at all times the beans received had been converted by the Hawkins Warehouse from the plaintiffs herein for the use and benefit of Hawkins and the Defendant Klein. The Defendant Klein received no title to said property because of the conversion by Hawkins.

The value of the 110,000 cwt received during the summer months of 1988 should be restored to the individual depositors as a class.

Said Klein Brothers had knowledge or reason to know that the beans purchased were not the property of Hawkins, but were in fact embezzled by the said Hawkins Co., Ltd.

The essence of the Growers' current claim is one of ownership or title. It is significant to note that this claim, and the facts which the Growers allege to support the claim, does not distinguish between beans that were shipped and beans that remained in storage, but includes all beans sold to Klein by Hawkins. The Growers assert that Klein never acquired title to the beans because Klein bought the beans knowing, or with reason to know, that Hawkins had no title to convey. It is undisputed that this exact same issue was litigated in the bankruptcy action with respect to the beans that remained in storage at the time Hawkins filed for bankruptcy. The Growers argue, however, that their current claim is not the same as their claim in the bankruptcy proceeding because in the bankruptcy proceeding they were claiming ownership to the beans that remained in storage, while in this suit they are claiming ownership to the beans that Klein purchased from Hawkins and subsequently sold and shipped to its customers.

Application of the uncontroverted facts to the standards set forth above reveals that the Growers' argument is unfounded for at least two reasons: (1) the claim regarding Klein's title to the shipped beans was actually addressed and settled in the bankruptcy proceeding, and (2) an examination of the operative facts underlying the claims for the shipped and the stored beans reveals that both claims arose out of the same series of transactions and, therefore, the claims are the same for the purpose of *res judicata.*

C. Ownership Claims Regarding the Shipped Beans were actually Disputed and Settled in the Bankruptcy Action.

The debtor in possession in a Chapter 11 bankruptcy proceeding has the power and fiduciary obligation of a trustee to be an active agent for the prosecution of the interests of all creditors of the estate. 11 U.S.C.A. § 1107 (West 1979). *In Re Wiggs,* 87 B.R. 57, 58 (Bankr.S.D.Ill.1988); *In Re Haugen Const. Service,* 104 B.R. 233, 239 (Bankr.D.N.D.1989); *In Re Consupak, Inc.,* 87 B.R. 529, 539 (Bankr.

N.D.Ill.1988). As such, the debtor in possession is the representative of the bankrupt's creditors, and may sue one creditor for the benefit of the other creditors. *In Re Benny,* 29 B.R. 754, 760 (N.D.Cal.1983), *aff'd,* 786 F.2d 1410 (9th Cir.1986), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). If the transactions between Hawkins and Klein for the sale and purchase of the beans were improper, as the Growers claim, the debtor in possession had the ability and fiduciary obligation to unwind those transactions and to recover the proceeds for the benefit of Hawkins' creditors.[2] The right of the debtor in possession to unwind these transactions and recover money for the estate is property, or an asset, of the estate. *In Re Perry,* 48 B.R. 591, 598–99 (Bankr.M.D.Tenn.1985); *In Re Bullion Reserve of North America,* 836 F.2d 1214 (9th Cir.1988), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).

As recited in the facts above, both the Greenwood and Melanson reorganization plans proposed that the bankrupt estate be divided into two separate estates: a § 557 estate, which consisted of the beans remaining in the warehouse, proceeds of beans and bond proceeds; and a § 541 estate, which consisted of all other assets of the estate. Properly listed among the § 541 assets were "any rights of Debtor-in-possession under Title 11 to recover money or property for the benefit of the estate." Thus, the Growers' current claim, that Hawkins' sale of the beans to Klein was a fraudulent conveyance, was a claim which the debtor in possession had a right to bring for the benefit of the estate, and as such was listed as an asset of the § 541 estate in both the Greenwood and the Melanson Plans. Hawkins, as debtor in possession in this case, represented the Growers and possessed the power in the bankruptcy proceeding to pursue the same claim which the Growers now raise.[3]

The Melanson Plan provided that all claims would be settled and distributed according to the terms of the Plan, and would not be reserved and converted to a Chapter 7 proceeding. The Plan expressly stated that any claims which the debtor in possession might bring to unwind fraudulent conveyances and thus recover money for the benefit of the estate's creditors were valued at zero. Accordingly, the Plan did not require the debtor in possession to pursue any claims for fraudulent conveyances. To the contrary, the Plan provided that all disputed questions regarding the bankruptcy be settled according to the evaluation and distribution of the assets set out in the Plan, which evaluation attributed no value to possible claims for fraudulent conveyances. Thus, the Melanson Plan did address and settle the very claim now brought by the Growers, which claim seeks to unwind Hawkins' conveyance of the beans to Klein.

The fact that the claim was assigned no value by the parties to the bankruptcy does not change the fact that it was listed as an asset and settled by the terms of the Plan. The very purpose of this Plan was to provide "a formula and method for distributing § 557 assets to the owners while, at the same time, bringing all claims in this matter to a speedy and equitable conclusion." The Growers shared in the benefits of this Plan by obtaining a more speedy distribution of their pro rata share of the § 557 assets and also by obtaining Hawkins' release of all its potential claims against the Growers. For the reasons stated above,

---

**2.** In this regard, we believe it is also important to quote the following from *Haugen Const. Service,* 104 B.R. at 240–41:

A trustee is under no mandatory duty to pursue and recover every transfer that might be avoidable under one of the Bankruptcy Code's avoidance sections.... In making a decision, a trustee, cognizant of his fiduciary role, must avoid spurious lawsuits as well as those which, while having theoretical legal merit, would be unduly expensive to the estate, involve undue risk to the estate or likely result in minimal recovery for the estate.

**3.** The Greenwood Plan proposed that the § 541 estate, including the Growers' current claim, would be converted to a Chapter 7 proceeding, in which a third party trustee would be appointed by the court to pursue all claims of the estate and to liquidate and distribute all remaining assets. As noted, this plan was reviewed and ultimately rejected by the parties to the bankruptcy.

we conclude that the Growers' current claim against Klein was actually addressed and settled by the confirmed Melanson Plan.

### D. The Growers' Current Claim against Klein is a Matter that Could and Should Have Been Litigated in the Bankruptcy Proceeding.

Even if we were to conclude that the Growers' claim to the shipped beans was not specifically addressed in the bankruptcy action, it is undisputed that the Growers' claim of ownership of the beans that remained in storage was litigated in the bankruptcy action. Because the Growers' claim to the beans in storage was actually adjudicated in the bankruptcy proceeding, the Growers, under *Diamond*, are precluded from litigating against Klein a claim that arises out of the same transaction or series of transactions from which the Growers' claim to the beans in storage arose. In applying this rule, we look at a claim in factual terms and "make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff." *Diamond*, 119 Idaho at 150, 804 P.2d at 323 n. 4. The series of transactions at issue in both the Growers' current claim to the shipped beans and the Growers' former claim to the stored beans are those transactions that either did, or did not, convey good title to Klein; namely, Klein's purchases from Hawkins. Both the stored and the shipped beans were purchased in the same series of transactions, and Klein's title to either set of beans stands or falls on whether Klein purchased the beans as a buyer in the ordinary course of business. Many of the beans that remained in storage at the time that Hawkins' warehouse was seized were purchased under the exact same contracts as the beans that had already been shipped. In any case, we conclude that while the Growers have conceptually divided the subject matter of the two law suits into two sets of beans—one set that remained in storage and one that had been shipped—the Growers' claim to ownership of either set of beans arises out of a

single series of transactions: Klein's purchases of those beans from Hawkins. Because the two claims have arisen out of the same series of transactions, we conclude that the Growers' former claim to the beans in storage is *res judicata* to the Growers' current claim to the shipped beans.

Further, when this case is viewed in light of the fundamental purposes of the doctrine of *res judicata*, it becomes apparent that the doctrine should be applied in this case to preclude the Growers' current claim. The purposes of *res judicata* are: (1) to preserve the integrity of judgments against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results, (2) to serve the public interest in protecting the courts against the burdens of repetitious litigation, and (3) to advance the private interest in repose from the harassment of repetitive claims. *Aldape v. Akins*, 105 Idaho 254, 257, 668 P.2d 130, 133 (Ct.App.1983).

If the Growers were allowed to litigate their current claim against Klein, that litigation could lead to a judgment that is inconsistent with the confirmed reorganization plan ordered by the bankruptcy court. Under that plan Klein was determined to be a prima facie owner of the beans that it had purchased from Hawkins, and was therefore entitled to a pro rata distribution of the proceeds of those beans that remained in storage. A judgment in favor of the Growers in their current action against Klein would be inconsistent with that result. Further, the express intent of the plan was to settle all disputes related to the bankruptcy. To allow the Growers to maintain this action would directly contradict and frustrate that intent.

Finally, to allow the Growers to maintain their claim against Klein would go against both public and private interests in protecting the judicial system, taxpayers, and private individuals from the burdens of repetitious litigation. The doctrine of *res judicata* "reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." *Diamond*, 119 Idaho at 148, 804 P.2d at

321. At the time of the bankruptcy action, the Growers had full knowledge of the facts underlying their current claim to the shipped beans. Those facts are the same facts upon which their claim to the stored beans was based. This is further evidenced by the fact that the Growers' current claim, and the facts they allege to support their claim, does not distinguish between shipped beans and beans that remained in storage, but applies to all the beans sold to Klein by Hawkins. Clearly, the Growers had the capacity to present their entire controversy before the bankruptcy court. We hold that the issue raised by their current claim was, in fact, raised and resolved in the confirmed Melanson Plan.

## V. CONCLUSION

For the reasons stated above, we hold that the Growers' current claim was settled by the Melanson reorganization plan, and arises out of the same series of transactions as the Growers' claim in bankruptcy court. Therefore, the Growers' current claim against Klein is barred by the doctrine of *res judicata* and the district court's order granting Klein's motion for summary judgment was proper. The summary judgment in favor of Klein is affirmed.

Costs to respondent. I.A.R. 40. No attorney fees awarded on appeal.

WALTERS, C.J., and BAIL, J., Pro Tem, concur.