931 P.2d 652

**POWDER BASIN PSYCHIATRIC ASSO-CIATES, INC., a Professional corporation, Plaintiff–Appellant,**

v.

**George J. ULLRICH, M.D., Defendant–Respondent.**

**No. 22516.**

Court of Appeals of Idaho.

Dec. 18, 1996.

Petition for Review Denied Feb. 28, 1997.

Harvey Richman, Coeur d'Alene, argued, for plaintiff–appellant.

Wetzel & Fasnacht, Coeur d'Alene, for defendant–respondent. Robert J. Fasnacht, Jr., argued.

WALTERS, Chief Judge.

After Powder Basin Psychiatric Associates, Inc. (Powder Basin) terminated George J. Ullrich's employment contract, Powder Basin filed two actions against Ullrich. In the first action, Powder Basin claimed that Ullrich was in wrongful possession of the corporation's personal property, and it sought recovery of the property pursuant to the claim and delivery statutes, I.C. Sections 8–301 through 8–312. The parties later negotiated a settlement, and that action was dismissed. In the second action, which is now before this Court, Powder Basin claimed that Ullrich wrongfully retained monies that belonged to Powder Basin and that were earned through services Ullrich rendered before being terminated. The district court granted summary judgment in favor of Ullrich on the ground that the claim was barred by res judicata resulting from the earlier action. Powder Basin now appeals from this order. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Drs. Billy O. Barclay and George J. Ullrich, both psychiatrists, were employees of Powder Basin.[1] During Ullrich's employment, Powder Basin maintained offices in Coeur d'Alene and Spokane. On November 30, 1994, Powder Basin and Ullrich terminated their business relationship which had extended over a period of approximately seven months. They agreed to settle accounts between themselves and to establish separate practices.

Powder Basin subsequently sued Ullrich, alleging that Ullrich had taken some office furniture and office equipment from the corporation's office in Spokane in order to furnish the office for his new practice. Powder Basin claimed that Ullrich, as its employee, came into possession of these corporate assets which did not become Ullrich's personal property upon his termination. Pursuant to the claim and delivery statutes, Powder Basin alleged that Ullrich wrongfully retained these assets, and it requested an expedited hearing for return of the property. Ullrich responded that he was entitled to certain financial offsets from Powder Basin as a result of his employment agreement.

In a letter to Ullrich dated January 11, 1995, Powder Basin claimed that Ullrich was in possession of more corporate property than alleged in the complaint, which he was also wrongfully retaining. The assets described in the letter were monies arguably received by Ullrich for "services [Ullrich] performed at Pine Crest Hospital for Washington Medicaid patients and as Director of the Children's Unit. . . ." Powder Basin stated in the letter that before the lawsuit could be settled, a complete accounting must be made of these monies. In its second letter to Ullrich, dated February 10, 1995, Powder Basin stated in pertinent part that:

> Any and all earnings generated after November 30, 1994[,] belong to Dr. Ullrich, without exception. Any earnings generated before November 30, 1994[,] belong to Powder Basin. In this regard we have reason to believe that DSHS income generated before November 30 is regularly paid within 30 or 60 days thereafter. We require that those sums be accounted to and paid to Powder Basin. We believe that this directorship fee for the [C]hildren's [U]nit for period of service ending November 30 is an asset of and must be paid to Powder Basin.

Powder Basin did not amend its complaint to either seek an accounting or to recover the money referenced in these letters. The record shows, however, that the parties later negotiated a settlement. Powder Basin subsequently drafted a stipulation to dismiss the lawsuit with prejudice which the district court granted in February of 1995.

On March 23, 1995, Powder Basin filed a second action, alleging that Ullrich wrongful-

---

1. For the purposes of this action, Barclay and Powder Basin are considered one and the same since Barclay owned all of the corporation's stock during the time of the events at issue.

ly retained monies in excess of $10,000 for services rendered during his employment. Ullrich responded that this second action was barred by the doctrine of res judicata because Powder Basin's claim arose from the same transaction as the first action. Ullrich also counterclaimed that Powder Basin was unjustly enriched by wrongfully retaining accrued profits in excess of $10,000 because Ullrich had detrimentally relied upon representations by Powder Basin that Ullrich would either receive a cash bonus or be allowed to purchase a fifty percent interest in the corporation.

After a hearing on the motion for summary judgment, the district court granted a partial summary judgment in favor of Ullrich, and later upheld its ruling on a motion to reconsider. The court then certified the order as a final judgment pursuant to I.R.C.P. 54(b). In an order amending the judgment, the district court stated that "upon final affirmance by the appellate Court ... the Counterclaim shall be dismissed with prejudice...." Powder Basin now appeals from the court's order granting partial summary judgment and its order denying its motion to reconsider.

## II. STANDARD OF REVIEW

Preliminarily, we note that a partial summary judgment may be certified by the district court as a final judgment and, thus is appealable, when the trial judge makes the determination that there is no just reason for delay. I.R.C.P. 54(b); *Wilson v. Hambleton,* 109 Idaho 198, 203, 706 P.2d 87, 92 (Ct.App. 1985).

A summary judgment can be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). When faced with an appeal from a summary judgment, the appellate court employs the standard of review applied by the trial court when originally ruling on the motion for summary judgment, liberally construing the record in the light most favorable to the party opposing the motion. *Cates v. Albertson's Inc.,* 126 Idaho 1030, 1033, 895

P.2d 1223, 1226 (1995); *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *Dunnick v. Elder,* 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct.App.1994). The motion must be denied if reasonable people could reach differing conclusions or draw conflicting inferences from the record. *Cates,* 126 Idaho at 1033, 895 P.2d at 1226; *Sohn v. Foley,* 125 Idaho 168, 171, 868 P.2d 496, 499 (Ct.App.1994). If the record presents no genuine issues of material fact, however, the motion for summary judgment must be granted. *Cates, supra; Van Velson Corp. v. Westwood Mall Assocs.,* 126 Idaho 401, 406, 884 P.2d 414, 419 (1994); *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 941, 854 P.2d 280, 284 (Ct. App.1993).

## III. DISCUSSION

Powder Basin claims that the district court erred in applying res judicata principles in this case to support an award of a partial summary judgment in favor of Ullrich. In determining whether the district court erred in granting summary judgment on the basis that the claim was barred by the doctrine of res judicata, we note that this doctrine precludes the relitigation of a matter previously adjudicated. *Ernst v. Hemenway and Moser Co., Inc.,* 126 Idaho 980, 984, 895 P.2d 581, 585 (Ct.App.1995); *Aldape v. Akins,* 105 Idaho 254, 256, 668 P.2d 130, 132 (Ct.App.1983). Functionally, the doctrine has two components—claim preclusion and issue preclusion: *Aldape,* 105 Idaho at 256, 668 P.2d at 132.

> "[C]laim preclusion," or true res judicata ... treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." * * * When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar." * * * Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim be-

tween the same parties, whether or not raised at trial. \* \* \* \* \* \* [C]ollateral estoppel or "issue preclusion" ... bars relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties.... [T]he contested issue must have been litigated and necessary to the judgment earlier rendered.

*Roselle v. Heirs and Devisees of Grover,* 117 Idaho 530, 532–33, 789 P.2d 526, 528–29 (Ct. App.1990); *Aldape,* 105 Idaho at 256–57, 668 P.2d at 132–33.

■ Claim preclusion "[preserves] the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results." *Crown v. Klein Bros.,* 121 Idaho 942, 949, 829 P.2d 532, 535 (Ct.App.1991); *Aldape,* 105 Idaho at 257, 668 P.2d at 133. Second, it serves the public interest in protecting the courts against the burdens of repetitious litigation and third, it advances the private interest in repose from the harassment of repetitive claims. *Crown, supra; Aldape, supra.*

**A. Expedited Settings of I.C. Section 8–312 and I.C. Section 6–310 Are Not Analogous.**

■ By use of an analogy to the procedure for an unlawful detainer action, Powder Basin argues that its claim should not be barred by res judicata as a result of the earlier action. It asserts that the earlier action was brought to obtain an expedited setting before the trial court for the determination of the right to possession of personal property, a situation which is similar to the statutory procedure in unlawful detainer actions allowing for an expedited hearing to determine the right to possession of real property.

Powder Basin points out that the unlawful detainer statute, I.C. Section 6–310, provides that the right to an expedited trial setting (within twelve days from the filing of the complaint and service of the summons) is available only if the action is exclusively for the possession of a tract of land of five acres or less after nonpayment of rent. As a result, a claimant is precluded from obtaining an expedited setting where the complaint

seeks relief on any other claims. Powder Basin argues that the same process should be applied to an action for claim and delivery with respect to personal property. In short, Powder Basin contends that in order to obtain an expedited setting on its claim for possession of the property in the earlier action, it could not also assert a claim for any other form of relief.

We disagree. Both the unlawful detainer process and the claim and delivery process are statutorily controlled. The claim and delivery statute, I.C. Section 8–312, provides that while such actions generally may be given precedence over other pending civil actions insofar as setting the same for hearing or trial, the statutes relating to claim and delivery process do not require, as does the unlawful detainer action, that the action for recovery of personal property be an "exclusive" claim.

This method is not based on the uniqueness of real property for which the unlawful detainer statutes were established. We believe that a closer analogy can be found in the processes for either a writ of attachment or for injunctive relief accompanied by a temporary restraining order. In either case, the underlying cause of action triggering the right to claim and delivery continues to exist, and the claim remains subject to defenses and to counterclaims which may compel various processes requiring time and more involvement, such as discovery. We are not persuaded that—by judicial interpretation— we should engraft the "exclusiveness" requirement of the unlawful detainer action on to the statutes governing claim and delivery.

We reject Powder Basin's argument, and hold that the ancillary claim presented in this case could have been pursued in conjunction with the claim and delivery process filed in the first action.

**B. Transactional Facts for Both Cases Are Similar.**

■ Next, Powder Basin argues that its claim should not be barred by res judicata because the transactional facts required in the first action, where the issue was wrongful detainment of personal property, differ from

the transactional facts in this action, where the issue is the accounting of the earnings from Ullrich's service as an employee of Powder Basin. Powder Basin contends that as a result, the claim in this action is neither one that should have been decided in the first action nor was it necessary to the resolution of the claim in the first action.

A valid and final judgment rendered in an action extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose. *Bell Rapids Mut. Irrigation Co. v. Hausner*, 126 Idaho 752, 753, 890 P.2d 338, 339 (1995); *Diamond v. Farmers Group, Inc.*, 119 Idaho 146, 150, 804 P.2d 319, 323 (1990). In *Diamond*, the Court applied the formulation of the Restatement (Second) of Judgments Section 24, for determining the scope of a "transaction":

> What factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

119 Idaho at 150 n. 4, 804 P.2d at 323 n. 4. However, claim preclusion is not applicable where matters raised in the second suit were not ripe for adjudication in the prior case. *Bell Rapids*, 126 Idaho at 753–54, 890 P.2d at 338–39.

In granting partial summary judgment to Ullrich, the district court provided the following explanation for its ruling:

> As I said[,] I'm not very persuaded at all by the argument which seeks to draw an analogy with the unlawful detainer statute because it is a statutory creation and I don't think it really helps me.
>
> . . . .
>
> I think the test here really is a transactional test. I don't think you can carve out little tiny pieces of the law and say you're going to still have a claim preclusion doctrine at all, other than those exceptions that are specifically outlined in the case law. I don't really see that any of those

exceptions really apply here. This all comes out of one situation.

The essence of the claims in both actions is that, upon the termination of his employment, Ullrich converted property belonging to Powder Basin. The record clearly shows that Powder Basin terminated Ullrich on November 30, 1994, that several business accounts were to be settled thereafter, and that Ullrich retained office equipment and office furniture belonging to Powder Basin. No other events occurred upon which either the claim in the first action or the claim in this action could have been based. We therefore agree with the district court that the claims in both cases are based upon the same transactional facts. We uphold the district court's determination that this second action was barred on claim preclusion grounds.

**C. District Court's Application of Res Judicata Was Not Inequitable.**

Finally, Powder Basin argues that its claim should not be barred by res judicata because the district court's application of this doctrine was inequitable inasmuch as the court failed to dismiss Ullrich's counterclaim which arose from the same transaction. Powder Basin asserts that such inequity arises because Ullrich's counterclaim can be resurrected and available to him if the district court's order for partial summary judgment is affirmed on appeal. Powder Basin further asserts that if Ullrich pursues his counterclaim, it would have no viable defenses available.

This argument is illogical and contrary to the record. The record does not support the assertion that upon affirmance of the court's order, Ullrich's counterclaim can be resurrected. In the district court's order amending its final judgment, the court stated that "upon final affirmance by the appellate Court[,] ... the Counterclaim shall be dismissed *with* prejudice." (Emphasis added.) Because we affirm the court's order, Ullrich's counterclaim must be dismissed and it cannot be refiled.

**IV. CONCLUSION**

We conclude that the district court did not err in applying the doctrine of res judicata to

the claim in this case. We affirm the court's order granting partial summary judgment and its order denying the motion to reconsider. Costs on appeal are awarded to the respondent, George Ullrich. No attorney fees are awarded. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979); *Jahnke v. Mesa Equipment, Inc.,* 128 Idaho 562, 568, 916 P.2d 1287, 1293 (Ct.App.1996).

LANSING and PERRY, JJ., concur.